THOMAS J. WICHERS ET AL. *v.* WILLIE
HATCH ET AL.
(SC 16010)

Borden, Norcott, Katz, Palmer, Callahan, Ronan and Wollenberg, Js.

Argued December 8, 1999—officially released February 15, 2000

*Linda L. Morkan,* with whom was *Erin K. O'Brien,* for the appellants (defendants).

*Jill H. O'Connor,* with whom, on the brief, was *Laura A. Goldstein,* for the appellees (plaintiffs).

*Steven D. Ecker* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

KATZ, J. This case presents the issue of whether the trial court necessarily must set aside the verdict when, pursuant to General Statutes § 52-572h,[1] the jury returns a verdict awarding the plaintiff economic damages but zero noneconomic damages. This case also affords us an opportunity to decide what, if anything, should remain of this court's holding in *Johnson* v. *Franklin,* 112 Conn. 228, 152 A. 64 (1930), that an award of greater

---

[1] General Statutes § 52-572h provides in relevant part: "Negligence actions. Doctrines applicable. Liability of multiple tortfeasors for damages. (a) For the purposes of this section: (1) 'Economic damages' means compensation determined by the trier of fact for pecuniary losses including, but not limited to, the cost of reasonable and necessary medical care, rehabilitative services, custodial care and loss of earnings or earning capacity excluding any noneconomic damages; (2) 'noneconomic damages' means compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering; (3) 'recoverable economic damages' means the economic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur, and any reduction provided by section 52-225a; (4) 'recoverable noneconomic damages' means the noneconomic damages reduced by any applicable findings including but not limited to set-offs, credits, comparative negligence, additur and remittitur. . . ."

than nominal damages equaling the exact amount of medical expenses and lost wages claimed, with no allowance for substantial noneconomic damages, was inadequate as a matter of law, in light of this court's more recent decision in *Childs* v. *Bainer*, 235 Conn. 107, 121–22, 663 A.2d 398 (1995), which held that an award of economic damages need not be accompanied always by an award of noneconomic damages. When faced with the jury's award of zero noneconomic damages, the trial court in this case, relying on *Johnson*, invoked a per se rule to grant the plaintiff's motion for an additur. We conclude that a jury verdict awarding economic but not noneconomic damages to a tort claimant is not improper as a matter of law, and we expressly overrule that portion of *Johnson* that held otherwise.

The record discloses the following relevant facts. On August 15, 1994, an automobile driven by the named defendant, Willie Hatch (defendant), struck the automobile driven by the named plaintiff, Thomas J. Wichers (plaintiff), causing damage to both vehicles.[2] Following the accident, the plaintiff drove his car home for lunch and then returned to work that afternoon. The plaintiff did not go to the hospital and never consulted a physician. That night, the plaintiff consulted his chiropractor, who had been treating him since 1987. The parties stipulated before trial that the defendant was responsible for the collision, leaving for the jury the sole issue of what damages to award the plaintiff for the injuries that he allegedly had sustained.

At trial, the parties hotly contested the extent of the plaintiff's injuries. The plaintiff claimed that, as a result of the accident, he had suffered an acute cervical strain,

---

[2] This action was originally brought by the plaintiff and his wife, Helen Wichers, against the defendant and his wife, Joanna Hatch, as co-owners of the motor vehicle driven by the defendant. References herein to the plaintiff and the defendant are to Thomas Wichers and Willie Hatch, respectively.

a cervical subluxion, a 5 percent permanent impairment of the cervical spine, headaches, fatigue, physical impairment and depression. The plaintiff testified to an impaired range of motion in that he could not move his head completely to the left. His chiropractor, George Lentini, testified that the plaintiff, whom he had treated for four months as a result of the accident, suffered a 5 percent permanent impairment of his cervical spine. Lentini assessed this impairment rating based upon the plaintiff's claimed restricted range of motion.

Prior to the 1994 accident, the plaintiff had a neck impairment and, in fact, had been receiving treatment by Lentini as part of a monthly maintenance program since 1987. Prior to that, the plaintiff had received treatment from two other chiropractors. Additionally, since at least 1991, the plaintiff had been suffering from an arthritic condition in his neck, which had resulted in a reduced range of motion. He also suffered from a degenerative condition, known as spondylosis, which had exhibited its symptoms as early as 1993. Lentini testified that the plaintiff's restricted range of motion could have been caused by arthritis, spondylosis, normal wear and tear or aging.

The plaintiff had been involved in two other motor vehicle accidents, one in 1991 and another in 1993, both of which resulted in a neck injury. The 1993 accident required the plaintiff to undergo eight months of treatment with Lentini. Unfortunately, despite that treatment, the plaintiff failed to regain his pre-1993 range of motion.

At trial, the plaintiff argued that, although he had a preexisting condition, the defendant's negligence exacerbated that condition. He claimed pain and suffering and sought compensation. With regard to economic damages, the plaintiff asked the jury to award him $3377 in damages, representing the total cost of medical

expenses that he had incurred to the date of the trial. He also asked the jury to consider the fact that he would "probably continue maintenance treatment or wellness care for thirteen and one-half years" with his chiropractor. The plaintiff did not, however, introduce any evidence regarding the cost of that future treatment, nor did he suggest a specific dollar amount for this anticipated treatment.[3]

The defendant argued that the plaintiff's condition resulted, not from the 1994 accident with the defendant, but rather, from the plaintiff's arthritis and spondylosis, both degenerative conditions. Therefore, according to the defendant, because the plaintiff's condition would have continued to deteriorate regardless of the accident, he had failed to demonstrate a causal connection between the accident and the injuries allegedly suffered.

The trial court instructed the jury that it first had to determine whether there was a causal relationship between the accident and the injuries claimed by the plaintiff and, if so, what amount to award as fair, just and reasonable damages. Specifically, the trial court instructed the jury: "If you find that the plaintiff complains about an injury which would have occurred even in the absence of the defendant's conduct, then you must find that the defendant did not proximately cause that injury." The trial court further instructed the jury that, if it chose to award damages, it could "give the plaintiff only such damages as were proven to be the proximate consequence of the defendant's action which resulted in [the plaintiff's] claimed injuries." Regarding noneconomic damages, the trial court instructed the jury that the plaintiff "[was] not entitled to compensa-

---

[3] The plaintiff's claim for "[f]uture medical treatment" remained on the verdict form over the defendant's objection on the ground that the evidence did not support such an award.

tion for any preexisting conditions themselves. So, if you find that any of the plaintiff's injuries or losses preexisted this accident, you cannot award compensation for those conditions."

The jury returned a verdict of $3377 in economic damages and zero noneconomic damages. Thereafter, pursuant to General Statutes § 52-228b,[4] the plaintiff filed a motion to have the verdict set aside and for the court to order an additur. The sole basis of the plaintiff's motion was that the verdict was inconsistent in that "if the jury believed [he] was injured so as to require treatment and incur medical bills, it is inconsistent to find that these same injuries did not cause pain and suffering and a five (5%) percent permanent impairment to his cervical spine." In his memorandum in support of his motion, the plaintiff cited *Johnson* v. *Franklin,* supra, 112 Conn. 228. The defendant objected, citing *Childs* v. *Bainer,* supra, 235 Conn. 107, as support for his position that it is permissible for a jury to return a plaintiff's verdict awarding economic damages without also awarding noneconomic damages. On June 27, 1997, the trial court granted the plaintiff's motion and ordered the defendant to pay an additur of $7500 in noneconomic damages and further ordered that, if the defendant did not accept the additur, a new trial would be held limited to the issue of damages.

Thereafter, the defendant sought and obtained an articulation of the trial court's decision. In its articula-

[4] General Statutes § 52-228b provides: "No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable."

tion, the trial court cited to the jury's award of $3377 in economic damages, "the exact amount of his economic damages," and concluded therefrom that the "jury had to find that the plaintiff was injured in this accident." The trial court concluded that the "verdict was inconsistent and inadequate as a matter of law."

The defendant did not accept the additur and appealed to the Appellate Court. Thereafter, pursuant to Practice Book § 65-2, he filed a motion to transfer the appeal to this court, which we granted.[5] Subsequently thereto, the defendant filed a second motion for articulation to clarify whether the trial court had considered the failure of the jury to award future medical damages in its conclusion that the jury had awarded the plaintiff "the exact amount" of the plaintiff's claimed economic damages. The trial court responded to the defendant's inquiry articulating that it had not considered the jury's failure to award future medical costs. Rather, it had considered "only the fact that the jury had awarded the plaintiff the exact amount of his present economic damages to the penny, [and that] therefore, in awarding the plaintiff 'zero' noneconomic damages, the verdict was inconsistent and justified the court's granting an additur in favor of the plaintiff."

---

[5] Practice Book § 65-2 provides: "Motion for Transfer from Appellate Court to Supreme Court

"After the filing of an appeal in the appellate court, but in no event after the case has been assigned for hearing, any party may move for transfer to the supreme court. The motion, addressed to the supreme court, shall specify, in accordance with provisions of Section 66-2, the reasons why the party believes that the supreme court should hear the appeal directly. A copy of the memorandum of decision of the trial court, if any, shall be attached to the motion. The filing of a motion for transfer shall not stay proceedings in the appellate court.

"If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a motion to transfer and shall promptly decide whether to transfer the case to itself."

The defendant claims that the trial court improperly failed to exercise its discretion in deciding whether to grant the plaintiff's motion for an additur based upon its belief that *Johnson* mandated that result. Specifically, the defendant makes two arguments. First, he argues that the per se rule of *Johnson* should not have been invoked in this case because the jury, having failed to award the plaintiff the damages he sought for future medical expenses, had *not* awarded the plaintiff "the exact amount" of his claimed damages. Second, the defendant claims that, should this court determine that *Johnson* does indeed control the present case, it should be overruled because it is not fruitful to attempt to reconcile *Johnson* and *Childs* so that each may be applied in a workable manner.

We agree with the defendant that the departure in *Childs* from what was perceived to be the *Johnson* per se rule, has left trial judges in some confusion, and that to attempt to harmonize the decisions would require this court to establish an arbitrary demarcation of what percentage of a full economic damage recovery mandates an award of noneconomic damages. Any such attempt to engage in arbitrary line making is both unnecessary and unwise. We conclude that *Johnson* should be overruled explicitly, and that a case-specific standard should apply to the instance in which a party seeks to have a verdict set aside on the basis that it is legally inadequate.

Before we turn to the merits of the claim, we first address the proper standard for this court's review. Generally, we review a decision of the trial court setting aside the verdict and ordering an additur to determine whether the trial court properly exercised its discretion. *Childs* v. *Bainer*, supra, 235 Conn. 113; *Malmberg* v. *Lopez*, 208 Conn. 675, 679, 546 A.2d 264 (1988). When, however, the trial court concludes, as a matter of law, that it is compelled to act in a particular fashion, plenary

review is appropriate. *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). In this case, we read the trial court's articulations to support the defendant's characterization that, based upon *Johnson* v. *Franklin*, supra, 112 Conn. 228, the trial court believed that, as a matter of law, the jury's verdict was inconsistent. Therefore, we first must examine whether the trial court's conclusion was " 'legally and logically correct . . . .' " *Southeastern Connecticut Regional Resources Recovery Authority* v. *Dept. of Public Utility Control*, 244 Conn. 280, 291, 709 A.2d 549 (1998).

In order to answer that question, we begin with a discussion of *Johnson* v. *Franklin*, supra, 112 Conn. 228. In *Johnson*, three plaintiffs, who were injured as a result of an automobile collision, commenced an action that resulted in a jury award for the exact amount of the economic damages alleged. No general or noneconomic damages were awarded, and the trial court, treating the award as so nominal as to be tantamount to a defendant's verdict, denied the motion to set aside the verdict, concluding that the jury " 'may very reasonably have found' " that the plaintiffs did not deserve a greater recovery. Id., 229. In reversing the judgment, this court concluded that the damages were not nominal; id., 230; and that the trial court should have set aside the verdicts as a matter of law because, "if the plaintiffs were entitled to verdicts those rendered were manifestly inadequate . . . ." Id., 232. The court held that an award limited to nominal or special damages necessarily and logically required an award of noneconomic damages, and that, therefore, an award limited to economic damages is inadequate as a matter of law and should be set aside. Id., 229; see also *Malmberg* v. *Lopez*, supra, 208 Conn. 681.

In 1995, this court had occasion to reexamine the per se rule of *Johnson* in *Childs* v. *Bainer*, supra, 235 Conn. 107, wherein the jury had awarded the plaintiff $3649

in economic damages but had failed to award any non-economic damages. The trial court had denied the plaintiff's motion for additur, concluding that the award was not manifestly unjust or against the weight of the evidence. In affirming the judgment of the trial court, we held that "the common law of this state does not recognize the principle that awards limited to economic damages are inadequate as a matter of law and must be set aside, or the principle that a fact finder must award noneconomic damages each time it awards economic damages." Id., 121. Indeed, as we had stated numerous times, "[t]he amount of a damage award is a matter peculiarly within the province of the trier of fact"; *Mather* v. *Griffin Hospital*, 207 Conn. 125, 138, 540 A.2d 666 (1988); and "[i]f, on the evidence, the jury could reasonably have decided as they did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . ." (Internal quotation marks omitted.) *Malmberg* v. *Lopez*, supra, 208 Conn. 679. Therefore, this court disavowed the proposition that courts must consider an award of economic damages with zero noneconomic damages always to be inadequate as a matter of law.

In *Childs*, however, we did not expressly overrule that portion of *Johnson* that had held that an award limited to nominal or special damages is inadequate as a matter of law. Rather, this court distinguished *Childs* from *Johnson* on two grounds. First, the plaintiff in *Childs* was awarded only 19 percent of the total amount of economic damages claimed; *Childs* v. *Bainer*, supra, 235 Conn. 118; whereas in *Johnson*, the plaintiffs had been awarded the exact amount of the economic damages claimed. *Johnson* v. *Franklin*, supra, 112 Conn. 232. Second, the evidence of physical injuries as well as damages in *Childs* was "neither substantial nor uncontested," whereas in *Johnson*, both the physical injuries and economic damages had been both substan-

tial and uncontested. *Childs* v. *Bainer*, supra, 118. As we explained in *Childs*, "the plaintiff was not entitled to an additur on the basis of our decision in *Johnson* v. *Franklin*, supra, [229] . . . . In *Johnson*, the verdict rendered for each of the three plaintiffs 'was for the exact amount of the special damages proved and with no allowance for the pain or the physical injuries suffered which were substantial.' Because the award was for more than mere nominal damages, the jury had found that the defendant was liable and that the plaintiffs' injuries were substantial. We concluded that where the plaintiffs are entitled to recover damages for their injuries, an award limited to nominal or special damages is 'manifestly inadequate' and should be set aside. Id., 232.

"[The case of the plaintiff in *Childs*] is distinguishable from *Johnson*. First, in this case the jury did not award the entire amount of claimed economic damages, but only 19 percent of that amount. Second, the evidence of physical injury offered by the plaintiff was neither substantial nor uncontested. Thus, the damages awarded by the jury were not manifestly inadequate, and the plaintiff was not entitled, under the rationale of *Johnson*, to an additur or, in the alternative, to a new trial in accordance with § 52-228b." *Childs* v. *Bainer*, supra, 235 Conn. 117–18.

In the present case, the defendant points out that in the aftermath of *Childs*, because it did not expressly overrule *Johnson*, our trial courts have struggled with what is left of *Johnson* and what general rules to apply. Trial courts have differed in their answers to these questions. Some have taken the position that, after *Childs*, an award of economic damages without noneconomic damages is no longer inadequate as a matter of law. Other trial courts have treated *Childs* as an exception to *Johnson*, and have distinguished the cases before them from *Childs*. Compare *Diakomis* v. *Dias*,

Superior Court, judicial district of Fairfield, Docket No. 950323511S (February 20, 1998); *Pearson* v. *Dobies*, Superior Court, judicial district of Litchfield, Docket No. 950069399 (December 10, 1997); *Mazur* v. *Mardoian*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 9301350905 (August 25, 1997); *Distasio* v. *Delpo*, Superior Court, judicial district of Waterbury, Docket Nos. 950127201, 940124137 (July 18, 1997); *Prince* v. *Sanderson*, Superior Court, judicial district of Litchfield, Docket No. 950069723 (July 11, 1997); *Horan* v. *Seigel*, Superior Court, judicial district of New London, Docket No. 534152 (May 1, 1997) (19 Conn. L. Rptr. 418); *Brady* v. *Mac Candlewood Co.*, Superior Court, judicial district of Danbury, Docket No. 315726 (March 5, 1997); *Waskewicz* v. *Detullio*, Superior Court, judicial district of Ansonia-Milford, Docket No. 0049192S (February 3, 1997); and *Simard* v. *Maryland Casualty Co.*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 920513929S (October 18, 1995).

The defendant argues that *Childs* and not *Johnson* controls the present case because the plaintiff was not awarded the exact amount of his claimed economic damages. The plaintiff counters that this case fits squarely within the confines of *Johnson* because the jury did award him the exact amount of medical expenses he incurred as a result of the defendant's negligence. We are, nevertheless, persuaded that any attempt to reconcile the two cases or to pigeonhole this case would require the court to establish an arbitrary demarcation of what percentage of a full economic damage recovery will mandate an award of noneconomic damages. Such arbitrary line drawing is both unnecessary and, indeed, unwise. Despite the factual distinctions between the two cases, and despite our earlier perception that the two cases were not necessarily inconsistent with each other, upon further reflection

we conclude that the holding in *Johnson*—that an award of economic damages that is not accompanied by an award of noneconomic damages is inadequate as a matter of law—was implicitly overruled by our holding in *Childs* that such an award is not *always* inadequate as a matter of law. Our focus on the particular facts of *Childs* to determine whether the damage award was adequate, effectively invalidated the per se approach to review of damage awards found in *Johnson*.

The *Johnson* rule developed out of concern that an award of economic damages with zero noneconomic damages is either ambiguous or inadequate. Upon further reflection, we recognize that those concerns are unwarranted. The assumption behind *Johnson* that a plaintiff who has proven that he was injured by a defendant's negligence must, by necessity, have also proven that the negligence caused pain and suffering is not sound, for example, in cases in which the plaintiff had a preexisting condition. In such circumstances, the causal connection between the pain experienced by the plaintiff and the defendant's conduct is not *automatic*. Therefore, the jury's failure to award noneconomic damages could simply reflect its conclusion that the plaintiff had not proven that he had suffered any *additional* pain as a result of the defendant's conduct. Hence, the other underpinning of *Johnson*, that every such verdict is ambiguous because it may reflect the jury's uncertainty as to the defendant's liability, is also fragile.

Additionally, because trial courts currently have the authority to remedy an award of inadequate damages, the *Johnson* rule is unnecessary. In *Birgel* v. *Heintz*, 163 Conn. 23, 27–28, 301 A.2d 249 (1972), we held that "[i]n passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experi-

ence, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial. . . . The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Citations omitted; internal quotation marks omitted.) General Statutes § 52-216a[6] is a codification of this common-law rule and implicitly incorporates the *Birgel* standard. By creating a system that allows inadequate awards to be remedied without sacrificing

---

[6] General Statutes § 52-216a provides in relevant part: "Reading of agreements or releases to jury prohibited. Adjustments for excessive and inadequate verdicts permitted. . . . If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

the discretion of either the jury or that of the the trial court, the additur statute renders the per se rule unnecessary.

Finally, the most notable limitation on the trial court's authority to act pursuant to § 52-216a derives from a litigant's constitutional right to have issues of fact determined by a jury. *Mather* v. *Griffin Hospital*, supra, 207 Conn. 138. "The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." *Camp* v. *Booth*, 160 Conn. 10, 13, 273 A.2d 714 (1970). Because in setting aside the verdict, the trial court deprives the party in whose favor the verdict was rendered of his constitutional right to have factual issues resolved by the jury, our role generally is to examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. *Palomba* v. *Gray*, 208 Conn. 21, 25, 543 A.2d 1331 (1988). Because the *Johnson* per se rule undermines the principle that litigants have a constitutional right to have issues of fact, including damages, determined by a jury, the need to cling to the per se rule is even more attenuated.

Therefore, we conclude that the per se rule from *Johnson* no longer remains useful or viable, and we expressly disavow it. Rather than decide that an award of only economic damages is inadequate as a matter of law, the jury's decision to award economic damages and zero noneconomic damages is best tested in light of the circumstances of the particular case before it. Accordingly, the trial court should examine the evidence to decide whether the jury reasonably could have found that the plaintiff had failed in his proof of the

issue. That decision should be made, not on the assumption that the jury made a mistake, but, rather, on the supposition that the jury did exactly what it intended to do.[7]

As we previously have stated, although the trial court has a broad legal discretion in this area, it is not without its limits. "Because in setting aside a verdict the court has deprived a litigant in whose favor the verdict has been rendered of his constitutional right to have disputed issues of fact determined by a jury; *Rickert* v. *Fraser*, 152 Conn. 678, 681, 211 A.2d 702 (1965); the court's action cannot be reviewed in a vacuum. The evidential underpinnings of the verdict itself must be examined. 'Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury, if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached.' *Horvath* v. *Tontini*, 126 Conn. 462, 464, 11 A.2d 846 (1940)." *Jacobs* v. *Goodspeed*, 180 Conn. 415, 417, 429 A.2d 915 (1980). "[I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work their will." Id., 419.

In this case, the jury could have accepted the evidence that it was advisable for the plaintiff to see his chiropractor more frequently than usual following the accident, but that the accident did not cause him actually to suffer greater pain than he already had experi-

---

[7] To the extent that *Johnson* presumed the former, it is inconsistent with our well established jurisprudence that evidence should be construed to support a jury's verdict. See, e.g., *Mather* v. *Griffin Hospital*, supra, 207 Conn. 139.

enced as a result of his preexisting condition. Certainly, the jury reasonably could have found that the accident had not aggravated the plaintiff's condition, and that his pain was the same as what he had experienced before his accident with the defendant. Thus, there was a sufficient evidentiary basis for the jury's verdict.

Therefore, the judgment of the trial court is reversed and the case is remanded to the trial court with direction to render judgment on the verdict.

In this opinion the other justices concurred.