[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Before the Court is the defendant's objection to portions of the plaintiffs' bill of costs seeking reimbursement from the defendant for a total of $1500 representing $750 charged to each plaintiff by a treating physician, Dr. Donald Dworken, to discuss the file prior to trial, commit to testify at trial and offer expert testimony at the trial. CT Page 3263
The principal issue to be decided is when do the plaintiffs' costs for securing a medical expert to testify at trial "accrue" pursuant to General Statutes § 52-195 (b) and thereby become the defendant's obligation to pay even though the ultimate verdicts were less than the offer of judgment filed as to each plaintiff.
Because the court holds that the costs for the plaintiffs' medical expert had accrued when they became a fixed obligation to pay and finds each plaintiff was obligated to pay those costs before the defendant's offer of judgment, the court awards the costs sought for the medical expert.
Since the facts of each plaintiff's case do not differ in any substantial way, the court will principally discuss plaintiff Eugene's case.
This was an automobile negligence case in which the jury found the defendant, Linda Nugent, negligent in the operation of her vehicle, but also assessed 50 percent responsibility for the collision to another driver Diaz, whom neither plaintiff sued. When reduced by the 50 percent which the jury allocated as the responsibility of the apportionment defendant, Diaz, the net verdict of $2,058.93 in favor of Eugene Lidman, was awarded as economic damages representing all of the defendant's 50 percent share of them. The same situation occurred in Eleanor Lidman's case, although the amount was slightly less. The jury awarded no noneconomic damages in either case. Each verdict was set aside on the plaintiffs' motion because the court found the verdict was ambiguous, internally inconsistent, illogical and unjust. Although the jury awarded all medical specials for which the defendant was responsible and though these medical bills were principally related to palliation of pain, nonetheless the trier found no damages for the enduring of that pain. This judgment was first sustained per curiam by the Appellate Court,Lidman v. Nugent, 55 Conn. App. 905, 741 A.2d 13 (1999). After granting the defendant's certification to appeal, Lidman v. Nugent, 252 Conn. 933,746 A.2d 788 (2000), it was remanded by the Supreme Court to the Appellate Court in light of the Supreme Court's decision in Wichers v.Hatch, 252 Conn. 174, 745 A.2d 789 (2000). Upon remand, the Appellate Court, Lidman v. Nugent, 59 Conn. App. 43, 755 A.2d 378 (2000), vacated its prior judgment and reversed this court's decision. The Appellate Court then remanded to the trial court with direction to reinstate the verdict and to render judgment thereon on the basis of the Supreme Court's conclusion in Wichers v. Hatch, supra, 252 Conn. 174, that a jury is not required to award noneconomic damages merely because it awarded economic damages. Lidman v. Nugent, supra, 59 Conn. App. 43. CT Page 3264
The judgment of the Appellate Court having become final, judgment is hereby granted in favor of each plaintiff and against the defendant in accordance with the jury's verdict.
The court will now turn to its discussion of the costs issue presented by this postverdict, postappeal motion.
The following facts are found. The case was called in for trial for the week of September 18, 1998. About two weeks before, on September 4 or 5, 1998, Attorney Albert Annunziata, representing both plaintiffs contacted their treating physician, Dr. Donald Dworken. He took some of Dworken's time, discussing with him both his report and his availability for trial in the week of September 23, 1998. On or about September 4 or 5, 1998, on behalf of these clients, Annunziata agreed, that day, to Dworken's professional fee of $750 to be paid to Dworken for his services in talking to Annunziata that day, and conferring further on the date of trial and giving his expert testimony. Dworken indicated he would cancel appointments for the date of his testimony at trial. Jury selection began September 18, 1998, in Milford Superior Court. Evidence started on September 23, 1998.
The court finds the testimony of Mr. Annunziata, the plaintiffs' attorney, credible, that he had agreed to pay $750 to Dworken for each plaintiff for his pre-trial discussions about each of their cases and for his testimony. The court also believes Annunziata's testimony that the doctor agreed to be available the week of September 23, and that the total fee of $1500 was reasonable for canceling appointments, reviewing the medical records over the phone, preparing his testimony, meeting with Annunziata on the day of his testimony and giving his testimony at the court. The court also finds that although Dworken did in fact testify, that Annunziata's obligation was to so pay Dworken whether he testified or not.
The defendant first urges the court that it sent an informal letter offering to settle months prior to the verdict for a sum less than the actual verdict. This letter cannot avail the defendant because the issue to be determined is governed by the offer of judgment statute. Informal letter communications which are not filed as a pleading with the clerk and are not served on opposing counsel do not meet statutory offer of judgment triggering criteria and cannot benefit the defendant under the offer of judgment statute.
The court will next review some of our laws applicable to the remaining issues arising out of the defendant's filing of a subsequent offer of judgment. CT Page 3265
"It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute." M. DeMatteo Construction Co. v. New London, 236 Conn. 710,715, 674 A.2d 845 (1996). Section 52-260 provides for the recovery of costs for witness fees; subsection (f) treats as taxable those costs that arise when a medical expert "is summoned to give expert testimony in any action or proceeding. . . ." General Statutes § 52-260 (f)
General Statutes § 52-195 (b) governs the circumstances under which each party is entitled to such costs in the event that the plaintiff obtains a verdict in an amount less than an offer of judgment. It provides in pertinent part that: "Unless the plaintiff recovers more than the sum named in the offer of judgment, with interest from its date, he shall recover no costs accruing after he received notice of the filing of such offer, but shall pay the defendant's costs accruing after he received notice." General Statutes § 52-195 (b)
If the $1500 bill owed to Dworken had "accrued" under Section 52-195
(b) of the statutes by the time the defendant filed her September 23, 1998 offer of judgment, then the plaintiff would be entitled to these disputed costs.
There are no appellate cases that determine when costs accrue" for purposes of § 52-195 (b) and there is a split of authority among the superior courts. This court has previously taken the position that a plaintiff's costs for an expert witness accrue when the plaintiff has a fixed obligation to pay the witness, rather than when the services are rendered. Horbel v. Remele, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 047913 (June 19, 1998, Flynn, J.) (22 Conn.L.Rptr. 323, 324); see also Magson v. Ferro, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 456567 (January 31, 1995, Handy, J.) (13 Conn.L.Rptr. 515, 516) (costs accrued when plaintiff made arrangements and financial commitments for experts to testify). Other courts, however, have taken the position that such costs accrue when the bargained for activity takes place. Wehrhahnv. Horesco, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 053016 (October 26, 1999, Corradino, J.) (costs do not accrue until expert actually testifies); McDunnah v. Shea, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 454414 (January 7, 1994, Berger, J.) (10 Conn.L.Rptr. 634, 636) (portion of costs for preparation and review accrued before offer and recoverable, portion relating to testimony accrued after offer of judgment and therefore unrecoverable).
One of Judge Corradino's concerns in Wehrhahn v. Horesco, supra, Superior Court, Docket No. 053016, was that a plaintiff could commit to CT Page 3266 paying a medical witness so far in advance of trial that it would be unreasonable to hold the defendant liable for that "accrued expense" under the offer of judgment statute. We don't have that kind of factual scenario in this case, however. Furthermore, the laws of economics should discourage litigants or their lawyers from such premature commitments.
General Statute § 52-260 (f) governing witness fees provides, in part, that "[w]hen any practitioner of the healing arts . . . is summoned to give expert testimony in any action or proceeding, the court shall determine a reasonable fee to be paid to the practitioner . . . and taxed as part of the costs. . . ."
Because section 52-195 (b) does not define the word "accrue," "[in] the absence of . . . statutory . . . guidance . . . [the court] may appropriately look to the meaning of the . . . [word] as commonly expressed in the law and in dictionaries." (Internal quotation marks omitted.) Vitti v. Allstate Ins. Co., 245 Conn. 169, 178, 713 A.2d 1269
(1998). "Applied to a cause of action, the term to accrue means to arrive; to commence; to come into existence; to become a present enforceable demand." (Internal quotation marks omitted.) Coelho v. ITTHartford, 251 Conn. 106, 111, 752 A.2d 1063 (1999). Connecticut's state agencies account for revenues and expenses on an "accrual basis," which means "revenues are accounted for when earned or due, even though not collected, and expenditures are accounted for as soon as liabilities are incurred, whether paid or not. . . ." General Statutes § 4-69 (1). Connecticut case law has also recognized "that obligations accrue in one period and may be payable at a later period." Cromwell v. Converse,108 Conn. 412, 428, 143 A. 416 (1928).
According to Webster's, "accrue" means "to happen or result as a natural growth [or] addition" and an "accrued expense" is an expense incurred but not yet paid." Webster's Encyclopedic Unabridged Dictionary of the English Language, (2nd Ed. 1996), p. 13. Further, "[i]t is . . . inaccurate to use accrue as a synonym for result or happen when there are no legal or financial implications. . . ." A Dictionary of Contemporary American Usage, (1957), p. 8. These definitions all perceive that the word "accrue" is used to connote a marking of some significant point in time from which some recognizable benefit or detriment runs. These definitions support the interpretation that, pursuant to § 52-195 (b), "costs accruing" before notice of an offer of judgment include costs for professional witness services for which the plaintiff has incurred a financial liability, regardless of when the contracted for services are scheduled to be performed or paid, so long as the initial contract is made within a reasonable time of the date on which the services are to be performed. CT Page 3267
This interpretation of "accrue" is supported by accepted principles of statutory construction. "A fundamental tenet of statutory construction is that statutes are to be construed to give effect to the apparent intention of the lawmaking body. . . . Where the words of a statute are clear, the task of a reviewing court is merely to apply the directive of the legislature since where the wording is plain, courts will not speculate as to any supposed intention because the question before a court then is not what the legislature actually intended but what intention it expressed by the words that it used. . . . When two constructions [of a word] are possible, courts will adopt the one which makes the statute effective and workable. . . ." (Citations omitted; internal quotation marks omitted.) Verrastro v. Sivertsen, 188 Conn. 213, 220, 448 A.2d 1344
(1982). Further, "[a] statute should be construed so that no word, phrase or clause will be rendered meaningless. The factors that this court looks to in construing a statute include its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment." (Internal quotation marks omitted.) Id., 221.
While the legislative history of § 52-195 does not expressly reveal the intended meaning of the word "accruing," it does not support the interpretation advanced by the defendant, that costs "accrue" only after services are rendered. The purpose of the offer of judgment statute is to conserve judicial resources and to encourage litigants "to bargain reasonably and in good faith and to settle close cases." 22 H.R. Proc., Pt. 5, 1979 Sess. p. 1683, remarks of Representative Berman. The imposition of prejudgment interest, costs and attorney's fees serves as an incentive to settle. Conn. Joint Standing Committee Hearings, Judiciary, Pt., 1979 Sess., p. 348, remarks of Richard Fuchs representing the Connecticut Trial Lawyers Association; 22 5. Proc., Pt. 3, 1979 Sess., p. 944, remarks of Senator Santaniello. Interest, costs and fees also act as a penalty upon those parties who have failed to act reasonably and in good faith, either by rejecting a reasonable offer of settlement or by failing to make a settlement offer early enough so that the opposing party can avoid incurring costs to begin with. 20 C.J.S. 9-10, Costs § 2 (1959). The penalties are, for the most part, aimed at the defendant because the legislature recognizes that it is the defendant who holds the money in dispute and therefore "frequently has an economic incentive or economic interest to continue the delay, to hold on to the money and not to settle the case since it can invest the proceeds and keep them at a high rate of interest within its own control." 22 H.R. Proc., supra, p. 1683.
The construction of the statute advanced by the defendant, Nugent, that she can file an offer of judgment on the morning of trial and still avoid liability for costs a successful plaintiff has obligated himself to pay up to that point, is contrary to the public policy the legislature sought CT Page 3268 to achieve. The defendant's construction does not serve to encourage the party holding the money to settle, rather, it encourages the defendant to delay settlement as long as it possibly can and then shift the costs of litigation to the plaintiff. Such a construction eradicates the defendant's incentive to settle before costs are incurred and removes the penalty the legislature sought to impose for failing to do so. "Costs . . . are in the nature of incidental damages allowed to indemnify a party against the expense of successfully asserting his rights in court. The theory on which they are allowed to a plaintiff is that the default of defendant made it necessary to sue him, and to a defendant, that plaintiff sued him without cause." 20 C.J.S., 9, Costs § 2 (1959). A construction that effectuates the purpose behind § 52-195 (b) is one that imposes the plaintiffs' pretrial costs, costs that the plaintiff has reasonably become obligated to pay prior to an offer of judgment, on the defendant. This construction will not only serve to encourage the defendant to file an offer, but will also encourage the defendant to file his or her offer early on, so that he or she may reduce, or avoid altogether, liability for incidental costs the plaintiff otherwise incurs to successfully litigate the claim in court. Imposing the plaintiff's trial preparation costs on the defendant pursuant to an offer of judgment statute will not result in any undue unfairness or surprise to the defendant because "[a]s every first year law student knows, trials are 90% preparation and 10% presentation." (Internal quotation marks omitted.) Harding v. Jacoby, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 353674 (July 22, 1993,O'Neill, J.) (9 Conn.L.Rptr. 431, 432).
Since expert witnesses must be retained for preparation and testimony before the first day of evidence, if a defendant wishes to avoid being taxed for costs to a prevailing plaintiff, he or she can make an earlier statutory offer of judgment, and thereby avoid being taxed for them if the plaintiff does not obtain a verdict "more then the offer".
An interpretation that allows the defendant to deprive the plaintiff of expert witness costs by filing an offer of judgment on the morning of trial does not comport with the kind of good faith bargaining contemplated by the legislature or advance the statutory purpose of settling claims. That interpretation, for which the defendant argues, merely serves to enable the defendant to shift the costs of litigation, costs the defendant has caused the plaintiff to incur by holding onto the plaintiff's money until the day of trial, to the plaintiff. Such an interpretation cannot be countenanced because it is contrary to the legislative intent of the statute, which is to encourage parties to settle claims early in the proceedings before costs are incurred by imposing economic disincentives for not doing so. CT Page 3269
Furthermore, the language of § 52-195 (b) does not support the defendant's reading of the statute. If, as the defendant claims, the legislature meant to deprive the plaintiff of costs for services rendered after an offer of judgment, it could have done so. Rather than providing that "the plaintiff shall receive no costs accruing after he received notice of . . . such offer," the legislature could simply have provided that "the plaintiff shall receive no costs for services rendered or costs paid after he received notice of . . . such offer." Additionally, if the court were to adopt the defendant's interpretation that costs for expert witnesses do not accrue until the witness has actually testified, it would have the incongruent effect of depriving the plaintiff of costs for expert witnesses in every case in which judgment is rendered in favor of the plaintiff but in an amount less than the defendant's offer and awarding the defendant costs for expert witnesses in every such case. If the legislature had intended such a result, it could have simply stated that, in the event that the plaintiff recovers judgment is an amount less than the offer, "he shall receive no costs for the services of expert witnesses but shall pay the defendant such costs" or that "he shall recover no costs except court costs and fees for service of process." Such an interpretation contravenes the public policy underlying the statute because, again, "[a]t all times during the lawsuit, it is the defendant, not the plaintiff, who holds the money in dispute and, therefore, has the incentive to prolong litigation." Blakeslee ArpaiaChapman, Inc. v. El Constructors, Inc., 239 Conn. 708, 755, 687 A.2d 506
(1997).
Additionally, the court must "presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Citations omitted; internal quotation marks omitted.) M. DeMatteoConstruction Co. v. New London, supra, 236 Conn. 715. The defendant's interpretation of § 52-195 (b), that costs for expert witness fees do not accrue until after the witness testifies at trial, is inconsistent with § 52-260 (f) and Practice Book § 18-11, which, by their terms, authorize such fees to be taxed in circumstances when the witness is "summoned" to give expert testimony, rather than when the witness actually testifies. See, e.g., Liberman v. Deming, Superior Court, judicial distract of Hartford-New Britain at Hartford, Docket No. 572990 (September 19, 2000, Fineberg, J.) (28 Conn.L.Rptr. 145) (expert witness costs granted for two hours time where expert testified for only one hour but his testimony was delayed one hour); Leveille v. Fishman, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 540229 (November 19, 1998, Lavine, J.) (23 Conn.L.Rptr. 425, 425-26) (witness' travel time to and from Massachusetts included in CT Page 3270 award of reasonable costs); Davis v. Hodge, 6 Conn. Sup. 261, 262 (1938) (witnesses' fees allowed for two days that witnesses waited in court for cases to be reached where witnesses were summoned in good faith and were ready to testify). Section 52-260 (f) contemplates that a witness is not only compensated for providing expert testimony at trial, but also for foregoing other income by making himself available for testimony on any particular day. This court finds that the defendant's construction is inconsistent with § 52-260 (f) and Practice Book § 18-11 which authorize witness fees to be taxed in circumstances where the witness is "summoned to give expert testimony" whether or not the witness actually testifies.
Moreover, "[buy its express terms, § 52-290 (f) treats as taxable . . . those costs that arise from an expert's testimony at trial." (Emphasis added.) M. DeMatteo Construction Co. v. New London, supra,236 Conn. 717. Costs that the plaintiff incurs in making arrangements to secure his expert witness' attendance at trial are costs that "arise from" the expert's testimony at trial.
Finally, a construction of § 52-195 (b), that the plaintiff's costs "accrue" when the plaintiff becomes obligated to pay such costs rather than when the services are rendered, is consistent with the interpretations of other state courts that have construed the word "accrue" as that word is used in similar offer of judgment statutes. See, e.g., Lasher v. Paxton, 956 P.2d 647, 648, rehearing denied, (Colo.App. 1998) ("`Accrual' in this sense, means due and payable or vested."); Poole v. Miller, 342 N.C. 349, 354, 464 S.E.2d 409, 412 (1995) ("Obviously, costs then accrued refers to those costs which had accumulated as of the date the offer was made to plaintiff."). In Lasherv. Paxton, supra, 956 P.2d 648, the plaintiffs, who at trial recovered less than the amount of the defendant's offer, claimed that the trial court erred in awarding the defendant the transcription cost of a deposition that was taken on the same day that the defendant's offer of judgment was made. Id. The court held that the date the deposition was taken was irrelevant to determining when the cost accrued, rather, the defendant was entitled to the deposition transcription costs because "[t]he . . . cost did not accrue until defendant ordered and received a copy and thereby became obligated to pay for it." Id. Accordingly, the court held that because the defendant did not order and thereby become obligated to pay for transcription of the deposition until after he made an offer of judgment, the defendant was entitled to those costs as "costs accruing" after an offer of judgment. Id. Like the defendant in Lasherv. Paxton, supra, these plaintiffs' costs for expert witness fees accrued not when the expert testified but when the plaintiffs became obligated to pay the witness, which in this case occurred on September 4 or 5, 1998, when their attorney made arrangements to secure the expert's attendance CT Page 3271 at court on the day of trial and agreed to pay his fees.
The court therefore holds that, for purposes of § 52-195 (b), the plaintiffs' costs for employing a medical expert to testify at trial "accrue" at the point when the plaintiff has a financial obligation to pay the expert his fee, rather than after the witness has actually testified or been paid. The court further finds that the weight of the evidence justifies its finding that the plaintiffs had a financial obligation to pay Dworken $750 each for his consulting with the plaintiffs' attorney and reserving the time and availability to testify on their behalf at the negligence trial and this obligation become fixed prior to the filing of the September 23 offer of judgment. Furthermore, the court finds nothing unreasonable in the plaintiffs' timing of the retention of the doctor nor does it find it unreasonable that the doctor would expect to be paid for review of each case prior to September 23 and for reserving the time to testify even if his September 24 testimony had been unnecessary because of a last minute cancellation. It defies common sense to think that a competent lawyer could wait to call a doctor as a witness on the morning evidence was starting in a short trial and still expect to have the medical witness prepared and available for trial testimony.
Judgment is to enter in favor of each plaintiff on the verdicts and the plaintiffs' bill of costs is allowed in its entirety.
Flynn, J.