[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION POSTTRIAL MOTIONS
This personal injury case arose out of a motor vehicle accident on August 2, 1994, in Manchester, Connecticut. The plaintiff; Clint Verdone, was the passenger in a motor vehicle operated by Robert Goodrich when it was involved in an intersection accident with the defendant, Martha Moreno-Gonzalez, an uninsured motorist. The defendant, United Services Automobile Association (USAA), is the liability carrier for Goodrich and the primary carrier on the uninsured motorist claim. After the liability claim as to Goodrich was settled prior to trial for $14,000, the uninsured motorist claim was tried to a jury and resulted in a plaintiff's verdict on December 1, 2000. The jury awarded $3065.49 in CT Page 8485 economic damages and $5000 in noneconomic damages for a total verdict of $8065.49. The percentage of negligence assigned to Goodrich and Gonzalez was fifty percent (50%) each, thereby reducing the amount of the verdict to $4032.75.
Following the verdict, the plaintiff timely filed a motion to set aside the verdict and a motion for additur. The defendant, USAA, timely filed a motion to reduce the verdict.[1] At the hearing held on the motions, the parties stipulated that the amount of the collateral source reduction was $650.40, which reduced the economic damages award after apportionment to $1207.55 resulting in a net award to the plaintiff of $3707.55.
 I
The plaintiff moves to set aside the verdict and for additur on the grounds that the jury failed to compensate adequately the plaintiff for his injuries, the permanency of which was essentially undisputed in that it was supported by the testimony of the plaintiff's treating physicians, Dr. Philip Arnold, a physiatrist, and Dr. W. Jay Krompinger, an orthopedist, as well as the defendant's expert witness, Dr. Peter Barnett, an orthopedist. In support of his motions, the plaintiff claims that given his age, undisputed permanency of the injuries he suffered and his life expectancy, the $5000 award for noneconomic damages is so low as to be unreasonable and illogical and is plainly inadequate.
In passing upon a motion to set aside a verdict based upon a claim of inadequate damages, if "[t]he trial judge in considering the verdict . . . finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is [her] duty to set aside that verdict and to grant a new trial. . . . The trial judge has a broad legal discretion and [her] action will not be disturbed unless there is a clear abuse. . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) Wichers v. Hatch, 252 Conn. 174, 187,745 A.2d 789 (2000).
For the reasons stated by the plaintiff and, for the reasons further articulated below, the court finds the award of $5000 in noneconomic CT Page 8486 damages to be so manifestly inadequate such that it shocks the "sense of justice" of the court.[2] See id. The plaintiff's motion for additur is therefore granted.
In support of its finding, the court finds that the following undisputed facts compel an additur in the amount of $15,000 in this case, for a total noneconomic damages award of $20,000. The plaintiff was seventeen years old at the time of the accident which occurred on August 2, 1994. He has an eleventh grade education, lives at home with his parents and works with his father in the family landscaping business which he has done for most of his life. His recreational activities included hunting, fishing, skeet and target shooting. He also volunteers at his local fire department where he had been the engineer of the station, caring for fire engines for seven years. He suffered injury to his neck, upper back and lower back and engaged in wide-ranging medical treatment including physical therapy, ultrasound and home exercises. Although he has been medically advised to find a new profession, he has opted not to do so. At the time of the trial in December 2000, six years after the accident, the plaintiff, now age 23, continues to have back pain that is disabling from time to time. Although he engages in most of the same recreational activities as he did prior to the accident, he does them less often and with less intensity. He is more restricted in the tasks that he can perform as a volunteer firefighter and remains on light duty. Although his pain does not stop him from doing most things required by his work, he pays for it at night. He continues to see a massage therapist once a week but it only helps him until the next time he works. The permanency of his injury was substantiated by a physiatrist and two orthopedists, including the independent medical expert engaged by USAA.
The plaintiff was a credible and compelling witness on his own behalf. In further support of the additur, the court notes in particular that the evidence supports the fact that the plaintiff experiences pain on a daily basis, the permanency and severity of which was undisputed, despite the appropriate level of medical treatment.
Against the weight of this evidence, the verdict of $5000 noneconomic damages is illogical, unreasonable and is so low that it shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. Unlike the recent decision of Weiss v. Bergen, 63 Conn. App. 810, 814, ___ A.2d ___ (2001), there was significant evidence presented at trial that strongly mitigates in favor of an additur.[3] For these reasons, the court concludes that an additur of $15,000 is warranted.
 II CT Page 8487
Having awarded an additur resulting in a total award of $20,000 noneconomic damages, USAA's liability for such damages after apportionment is $10,000. Based on the pre-additur award of $5000 noneconomic damages, USAA moves for a reduction of the noneconomic damage award to zero on the ground that it is entitled to a set-off for damages that have been paid by or on behalf of any person responsible for the injury pursuant to § 38a-334-6 (d) of the Regulations of Connecticut State Agencies. Specifically, the defendant points to the fact that the plaintiff accepted a settlement offer of $14,000 from Goodrich prior to trial. The defendant contends that it is entitled to a reduction of the noneconomic damages award to zero in order to prevent the plaintiff from receiving duplicate payments for the same injury pursuant to §38a-334-6 (d) and the plain language of the insurance policy.
"In accomplishing the myriad and difficult policy objectives inherent in the uninsured and underinsured motorist coverage statute, the legislature expressly left to the sound discretion of the insurance commissioner the authority to develop regulations pertaining to exclusions, including appropriate reductions to the limits of liability. . . . We previously have concluded that it expressly has been left to the commissioner to determine whether an alternative source of recovery available to the insured should be an applicable offset. . . ." (Citations omitted; emphasis in original.)Vitti v. Allstate Ins. Co., 245 Conn. 169, 186-87,713 A.2d 1269 (1998). "The right of an insurer to offset the limits of liability for uninsured and underinsured motorist coverage is controlled by § 38a-334-6. . . . Because of the exclusive application of the regulation to uninsured and underinsured motorist coverage, it is irrelevant that the receipt of the same resource might not be considered a double recovery against a first-party tortfeasor." (Citations omitted.) Id., 188.
Section 38a-334-6 (a) of the Regulations of Connecticut State Agencies provides in relevant part: "Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured or underinsured motor vehicle." Subsection (d) of the regulation further provides in relevant part: "Limits of liability. (1) The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability . . . except that the policy may provide for the reduction oflimits to the extent that damages have been (A) paid by or on behalf of any person responsible for the injury. . . . (2) The policy may also provide that any direct indemnity for medical expense paid or payable CT Page 8488 under the policy will reduce the damages which the insured may recover under this coverage." (Emphasis added.) Regs., Conn. State Agencies § 38a-334-6 (d)(1)(A) and (2). Therefore, "if the policy comports with the language of the regulation, it will be deemed to provide that same level of protection permitted by the regulation." Vitti v. AllstateIns. Co., 245 Conn. 176.
As an initial matter, the court notes that the insurance policy providing uninsured motorist coverage to the plaintiff as an insured was never introduced properly into evidence either at trial or during the hearing on the posttrial motions. Rather, a copy of the policy was submitted by the defendant as an attachment to its memorandum in support of its motion to reduce the verdict. The declarations page of the policy, presumably containing the limits of liability, was not included with the attachment. In response to the plaintiff's requests for admissions, however, USAA admitted that the policy had a limit of liability of $300,000 per person, per accident at the time of the accident. Nevertheless, to the extent that the defendant argues that it is entitled to a reduction to zero of the damages it owes to the plaintiff pursuant to this regulation, the court will consider the language of the policy due to the lack of any objection by the plaintiff regarding the policy's method of introduction.
Under Part C of the insurance policy, entitled "Uninsured Motorists/Underinsured Motorists Coverage (UM/UIM) Uninsured Motorists/Underinsured Motorists Conversion Coverage (UM/UIMC)," the policy provides that with respect to "accidents caused by an uninsured
motor vehicle under UM/UIM or UM/UIMC, the limit of liability shall be reduced by all sums: 1. Paid because of the [bodily injury] by or on behalf of persons or organizations who may be legally responsible." (Emphasis added.) With respect to "accidents caused by an underinsured
motor vehicle," however, the policy has two distinct provisions: "For accidents caused by an underinsured motor vehicle under UM/UIM, the limitof liability shall be reduced by all sums: (1) Paid because of the [bodily injury] by or on behalf of persons or organizations who may be legally responsible"; but "[f]or accidents caused by an underinsured motor vehicle under UM/UIMC, any amount payable for damages which the covered person is legally entitled to recover shall be reduced by all sums: 1. Paid because of the [bodily injury] by or on behalf of persons or organizations who may be legally responsible." (Emphasis added.)
The plaintiff's position is that while the defendant may be permitted to deduct $14,000 from the limit of liability,[4] neither the policy nor the regulation permits the defendant to deduct the settlement payment from the damages it owes to the plaintiff. The plaintiff contends that the plain language of the policy permits a reduction from damages under CT Page 8489 the underinsured motorist provisions but notably fails to make similar provision under the uninsured motorist provision. The plaintiff makes a similar argument regarding the language of the regulation, namely, that while § 38a-334-6 (d)(1)(a) allows for reduction of limits of liability to the extent any payments have been made by legally responsible persons, § 38a-334-6 (d)(2) only allows for reduction of damages for payments made for medical expenses.
The plaintiff's interpretation of § 38a-334-6 (d)(1) appears at first glance to lack merit given the Connecticut Supreme Court's decision in Buell v. American Universal Ins. Co., supra, 224 Conn. 775, which the defendant cites in support of its argument that a reduction of the verdict to zero is necessary to prevent double recovery. The court framed the issue in that case as "whether § 38-175a-6 (d)(1) [now §38a-334-6 (d)(1)], which permits an insurer to limit its liability by deducting amounts "paid by or on behalf of any party responsible for the injury,' allows an insurer to deduct a settlement payment from thedamages owed to its insured." (Emphasis added.) Id. The court concluded that "an insurer may limit its liability by deducting a settlement payment from the damages owed to its insured. To hold otherwise would provide the insured a windfall by permitting duplicate payments for the same injury." (Emphasis added.) Id. Thus, the court upheld the arbitrator's award allowing the insurer to take credit for two settlement payments made to the plaintiff. Id.
The court finds the decision in Buell to be distinguishable. Buell
involved underinsured motorist coverage with limits of liability of $100,000 and did not involve issues of apportionment between multiple tortfeasors. Thus, the insurance company was facing liability for 100 percent of the plaintiff's damages, which were found to total $78,000. To disallow a credit for $31,500 worth of settlement payments made to the plaintiff under such circumstances would have resulted in the plaintiff receiving duplicate payments for the same injury.
To the contrary, the present case involves uninsured motorist coverage by a carrier providing coverage for damages caused by an uninsured motorist that has been found by the jury to be liable for only half of the plaintiff's damages. The plaintiff settled with Goodrich for $14,000 prior to trial, and received a total jury verdict of $8065.49. As discussed above, however, the court has granted the plaintiff's motion for additur, determining the fair and just value of his noneconomic damages to be $20,000, resulting in a total damages award after the collateral source reduction of $22,415.09 ($2415.09 economic + $20,000 noneconomic). Therefore, after additur and apportionment, the defendant's total liability for uninsured motorist benefits is $11,207.55. CT Page 8490
The $14,000 paid on behalf of the other tortfeasor, Goodrich, also found to be fifty percent liable for the accident, represented his payment for his share of liability. Under such circumstances, the court fails to see why USAA should be entitled to a credit for a $14,000 payment made on behalf of Goodrich in settlement of his proportionate responsibility in causing the accident when USAA's liability is solely for the percentage of Gonzalez's responsibility. In contrast to the result in Buell, to allow USAA to deduct $14,000 from the $11,207.55 in damages it owes, thereby reducing liability to zero, would result in the plaintiff in this case being severely undercompensated, i.e., its total recovery would be limited to the $14,000 settlement when the value of his damages have been determined to be $22,415.09.
Even assuming for the sake of argument that § 38a-334-6 (d)(1) as interpreted by the court in Buell v. American Universal Ins. Co., supra,224 Conn. 775, does allow for an uninsured motorist coverage policy to provide for reduction of settlement payments from damages owed, the court agrees with the plaintiff that the policy in this case does not make such provision. Although the policy specifically provides, with respect to uninsured motorist coverage, for a reduction of the limit of liability for sums paid by or on behalf of legally responsible persons, the policy nowhere provides for such a reduction from damages owed. Because the policy does so provide for a reduction of damages with respect to underinsured motorist coverage, the court can only conclude that the omission with respect to uninsured motorist coverage was intentional.
The court therefore concludes that the policy does not permit the defendant to reduce the damages owed to the plaintiff by taking credit for the payment made on behalf of Goodrich. The defendant's motion for reduction of the verdict is denied.
 CONCLUSION
Based on the foregoing, the plaintiff's motion for additur is granted, and the court orders an additur of $15,000, for a total noneconomic damages award of $20,000, reduced after apportionment to $10,000. As to the economic damages award of $3065.49, since the parties stipulated at the hearing that the amount of the collateral source reduction was $650.40, the economic damages award is reduced to $2415.09 and further reduced after apportionment to $1207.55. Lastly, because the clear language of the applicable insurance policy does not so permit, the defendant's motion for reduction of the verdict by the amount of the settlement payment received by the plaintiff is denied.
If the defendant accepts the additur by July 9, 2001, judgment may enter for the plaintiff in the amount of $11,207.55 plus costs of CT Page 8491 $3235.70, for a total award of $14,443.25. If, however, the defendant does not accept the additur within thistime, the jury verdict is set aside and a new trial is order limited to the issue of damages.
Peck, J.