[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE THE VERDICT AND FOR NEW TRIAL AND MOTION FOR ADDITUR
On August 15, 2001, the jury in the above captioned matter returned a verdict of $2600.00 in favor of the plaintiff, Jennifer Ganim. The jury found that the defendant, Nicole Kegler, was liable to the plaintiff and awarded $2600.00 in economic damages, zero dollars in non-economic damages, and a total verdict in the amount of $2600.00. The verdict was accepted and ordered recorded by the court, Ballen, JTR.
The jury could reasonably have found the following facts. On May 29, 1996, the plaintiff was a passenger in a motor vehicle which was stopped at a stop sign eastbound on the Sherwood Island connector in the town of Westport. The defendant was operating her vehicle directly behind the plaintiffs vehicle and also came to a stop. While so stopped, the defendant's foot came off the brake and she rolled forward into the rear of the vehicle in which the plaintiff was a passenger. The impact was light. Photographs of both cars were introduced at trial as plaintiffs exhibits (## 3-9, 14, 15), which showed very slight damage to each vehicle. The defendant testified that both parties were all right and they conversed for less than 5 minutes before leaving the scene. The plaintiff went directly to her father's law office in Stratford. She later visited the Westport police station before going to her home in Stratford. The plaintiff testified that before this accident she could do all physical activities such as roller blading, walking, running, stretching, and spend unlimited time on the computer with no physical problems. She testified that, since this accident, she is unable to do any of the aforementioned activities without pain and that her back will never be the way it was. She stated that the doctor told her that it was a permanent injury, and that she will just have to live with it.
The plaintiff testified that on the day of the accident, an appointment was made with Dr. Donald Dworken, whom she saw on the very next day, May 30, 1996. Dr. Dworken examined her and treated her on that day and several times thereafter. She saw him on eight visits and was given physical therapy on nine occasions. She last saw Dr. Dworken for treatment on October 31, 1996. However, she saw him again on August 14, 2001, the day Dr. Dworken testified at this trial. She did not see him on any CT Page 14364 occasion between October 31, 1996, and August 14, 2001, nor did she see any other doctor for her back and neck problems at any time since the accident of May 29, 1996.
The plaintiff is a graduate of the University of Virginia and the University of Connecticut School of Law. A short time following this accident she passed the State of Connecticut bar examination, and was admitted as a Connecticut attorney. She further testified that she has been married for three years and has two children, ages two and one. She also testified, on cross-examination, that she never told her family doctor, or any doctor who treated her during her pregnancy and delivery of her two children, about her May 29, 1996 accident, her alleged back and/or cervical pains, and other claimed injuries arising from this accident. She did not seek any treatment other than the treatment she received from Dr. Dworken as aforesaid for the injuries she claimed were incurred as a result of the May 29, 1996 accident. She admitted being able to do her own cooking, house-cleaning, lifting and bending associated with the children and could do all activities but not without some pain and discomfort.
The plaintiff has moved to Set Aside the Verdict, Motion for a New Trial, and also a Motion for Additur. She argues in her memorandum that the jury's award of zero noneconomic damages is palpably against the evidence, shocks the sense of justice, and compels the conclusion that the jury was influenced by partiality, mistake or corruption, because the evidence at trial yielded that the plaintiff sustained injuries as a result of the accident, she suffered permanent partial disability, and that medical treatment was rendered for those injuries. The defendant argues in its memorandum in opposition to the plaintiff's motions that the verdict was fair, just and reasonable based on all the evidence, and based on the fact that the defendant's position throughout the trial was that the minor impact did not cause all of the medical bills claimed by the plaintiff, that the plaintiff was not injured in this accident, that the plaintiff, at best, suffered minor injury to her neck and back, and that the plaintiff was greatly exaggerating the nature of her pain and suffering and/or alleged pain and suffering.
As a preliminary matter, the plaintiff pointed out at oral argument that the jury took only a short period of time before returning with its verdict, and argued that this indicates that the jury never even reached the issue of non-economic damages. The court was also aware that the jury advised the marshal they had reached their verdict after approximately 15 minutes. For that reason the court addressed the jury as follows:
 The Court: All right. Ladies and gentlemen of the jury, I understand that you've knocked on the door and advised the marshal CT Page 14365 that you've reached a verdict in this matter.
Jurors: Yes
 The Court: I assume you have discussed the issues in the case among yourselves and deliberated and have unanimously arrived at this verdict.
Jurors: Yes, we did, Your Honor.
The Court: And you have considered all of the issues m the case?
Jurors: Yes, we did.
 The Court: All right. If you would just please pass the verdict to the marshal.
By this colloquy between the court and the jurors, the court is convinced that the jury both understood and discussed all of the issues in the case, including the issue of non-economic damages, and then reached a unanimously verdict.
"In passing upon a motion to set aside a verdict, the trial judge must do just what every juror ought to do in arriving at a verdict. The juror must use all his experience, his knowledge of human nature, his knowledge of human events, past and present, his knowledge of the motives which influence and control human action, and test the evidence in the case according to such knowledge and render his verdict accordingly. . . . The trial judge in considering the verdict must do the same . . . and if, in the exercise of all his knowledge from this source, he finds the verdict to be so clearly against the weight of the evidence in the case as to indicate that the jury did not correctly apply the law to the facts in evidence in the case, or were governed by ignorance, prejudice, corruption or partiality, then it is his duty to set aside that verdict and to grant a new trial. . . . The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by CT Page 14366 the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. " (Internal quotation marks omitted.) Gladu v. Sousa, 252 Conn. 190, 192, 745 A.2d 798
(2000).
"[Litigants have a] constitutional right to have issues of fact determined by a jury. . . . The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." (Citation omitted; internal quotation marks omitted.) Wichers v. Hatch,252 Conn. 174, 188, 745 A.2d 789 (2000). "[T]he amount of a damage award is a matter peculiarly within the province of the trier of fact. . . and [i]f, on the evidence, the jury could reasonably have decided as they did, [there is no] error in the trial court's acceptance of the verdict. . . ." (Citation omitted; internal quotation marks omitted.) Id., 183. "Similarly, [t]he credibility of witnesses and the weight to be accorded to their testimony lie within the province of the jury." (Internal quotation marks omitted.) Childs v. Bainer,235 Conn. 107, 112, 663 A.2d 398 (1995). "In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict." (Internal quotation marks omitted.)Ham v. Greene, 248 Conn. 508, 536, 729 A.2d 740 (1999). "[I]t is not the function of this court to sit as the seventh juror when "we review the sufficiency of the evidence. . . In other words, [i]f the jury could reasonably have reached its conclusion, the verdict must stand, even if this court disagrees with it." (Citations omitted; internal quotation marks omitted.) Ormsby v.Frankel, 255 Conn. 670, 692, 768 A.2d 441 (2001).
The evidence at trial showed that the impact was minor, that no police or ambulance was called to the CT Page 14367 scene, and neither of the vehicles needed to be towed. The plaintiffs exhibits (## 3-9, 14, 15) showed very slight damage to each vehicle. Furthermore, the plaintiff had gone without medical treatment for her alleged injuries and pain for almost five years. As mentioned previously, she last saw Dr. Dworken for treatment on October 31, 1996, and again on August 14, 2001, the day Dr. Dworken testified at this trial. She did not see him for treatment on any occasion between October 31, 1996, and August 14, 2001, nor did she see or complain to any other doctor concerning her alleged back and neck problems at any time since the accident of May 29, 1996. The court finds that the jury's award falls within the necessarily uncertain limits of just damages and does not so shock the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption. "[T]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable." (Internal quotation marks omitted.)Frankovitch v. Burton, 185 Conn. 14, 16, 440 A.2d 254
(1981). In the present case, although there was testimony and evidence from Dr. Dworken about the plaintiffs treatment and her alleged injuries and pain, "[t]he jury are the judges of the credibility of witnesses. They decide what weight justly belongs to the evidence. If the verdict to which they have agreed is a conclusion to which . . . honest men acting fairly and intelligently might come, then that verdict is final and cannot be disturbed." Lopez v. Price, 145 Conn. 560,564, 145 A.2d 127 (1958). In light of the fact that the defendant's position at trial was that the minor impact did not cause all of the medical bills claimed by the plaintiff, that it vigorously contested that the plaintiff was injured in this accident, or that the plaintiff, at best, suffered minor injury, and that the plaintiff was greatly exaggerating the nature of her alleged pain and suffering, the court finds that the jury could reasonably have reached its conclusion. Therefore, the verdict cannot be disturbed.
There is one last issue the court needs to address. On the jury verdict form, the only space filled out was for economic damages. The spaces for the amount of non-economic damages and the total amount of damages were left blank. The issue here is whether this affected CT Page 14368 the validity of the verdict, even though the jury confirmed the verdict twice when it was read to them by the clerk in open court.
The transcript concerning the verdict indicates that the verdict was announced twice for the assent of the jurors. The jurors assented both times. "There being no dissent, they are taken to have assented to the verdict as announced by the foreman and repeated to them by the court." McCaskey Register Co. v. Keena, 81 Conn. 656,659, 71 A. 898 (1909). "In Watertown Eccl. Society'sAppeal, 46 Conn. 230, 233 [1878], where the written verdict was signed by the foreman, but was defective in improperly stating the amount of the verdict, it was held that neither giving assent to the verdict in the jury-room, nor the signing of a writing there, nor the delivery of it to the clerk, absolutely bound the conscience of any juror, but it was what he assented to in open court that was the verdict in the case. And in that case as the clerk, in reading the verdict, had corrected the informality in it, it was held a good verdict as read by the clerk." McCaskey Register Co. v.Keena, supra, 659-60.
In the present case, the verdict did not state the amounts improperly. Instead, the amounts for non-economic and total damages were omitted. As inWatertown; supra, 46 Conn. 232-33; the clerk, acting as the organ of the court, corrected the informality by interpreting the amounts and by reading them to the jury twice in open court, "as non-economic damages, zero and total damages $2600.00." The clerk inquired each time whether the verdict as read by him was their verdict, and the jurors answered "yes" both times. In the present case, by assenting to the amounts as read, the jury twice confirmed that the clerk's interpretation of the verdict form was correct. Therefore, the informalities on the form did not constitute a defect in substance. See Ferris v. Hotel Pick Arms, Inc., 147 Conn. 72, 74,157 A.2d 106 (1959) ("Ample opportunity is thus afforded, and designedly so, for the court, counsel, and the jurors to comprehend the verdict and to cure any misunderstanding before the final assent."); WatertownEcclesiastical Society's Appeal, supra, 46 Conn. 233
(1878) ("[U]ntil [a juror gives] an affirmative answer to this last question by the clerk there [is] space for CT Page 14369 a change of opinion and opportunity to recall any previous act or word."). Under the procedures for receiving, accepting and recording a verdict "the final assent of the jurors, given after the verdict has been read aloud by the clerk, accepted and ordered recorded by the court, and read aloud a second time by the clerk, makes the verdict." Ferris v. Hotel Pick Arms,Inc., supra, 147 Conn. 74. In this manner a double safeguard is provided against mistake. See State v.DiPietro, 120 Conn. 537, 539, 181 A. 716 (1935). In the present case, it is clear that these safeguards functioned properly to validate the verdict as read by the clerk to the jury.
Finally, because an award of economic damages need not always be accompanied by an award of non-economic damages, the verdict is not improper in that respect either. Wichers v. Hatch, 252 Conn. 174, 188-89,745 A.2d 789 (2000). [T]he jury's decision to award economic damages and zero non-economic damages is best tested in light of the circumstances of the particular case before it." Id., 188. In the present case, the jury could reasonably have found that the plaintiff did not deserve a greater recovery, based on the facts of the case and the defendant having vigorously contested the nature and extent of the plaintiffs injuries. The court therefore concludes that the omissions on the verdict form did not affect the validity of the verdict.
Based upon the foregoing, the plaintiffs Motion to Set Aside the Verdict and For New Trial and Motion for Additur are denied.
BALLEN, J.T.R.