HELEN L. WHITE *v.* IRVING BYELAS IRREVOCABLE TRUST ET AL.
(AC 19760)

Schaller, Pellegrino and O'Connell, Js.

Argued November 28, 2000—officially released July 31, 2001

*Suzannah K. Nigro*, with whom, on the brief, was *Dion W. Moore*, for the appellant (defendant The Stop & Shop Supermarket Company).

*Lawrence F. Reilly*, for the appellee (plaintiff).

O'CONNELL, J. The defendant The Stop & Shop Supermarket Company (Stop & Shop)[1] appeals from the judgment rendered in favor of the plaintiff following a jury trial. The defendant claims that the court improperly refused to reduce the verdict by the amounts received by the plaintiff in settlement with other parties whose liability was apportioned by the jury. We affirm the judgment of the trial court.

This is a negligence action arising from injuries sustained by the plaintiff when she fell on snow and ice in the parking lot of the defendant's Westport store. Stop & Shop leased the store and adjacent sidewalk from the defendant Byelas.[2] The lease between Stop & Shop and Byelas allowed Stop & Shop to use an adjoining parking lot on Byelas' property for its customers. Byelas hired T. Palmer Landscaping Company (Palmer) to plow snow from the parking lot.

Snow had fallen two days prior to the plaintiff's fall, and Palmer had plowed the parking lot. The plaintiff thereafter brought this action against Stop & Shop and Byelas, who subsequently impleaded Palmer for indemnification and apportionment. Prior to trial, the plaintiff settled with Byelas and Palmer for $15,000 and $7500, respectively, and released them from liability and withdrew the action as to Byelas, who in turn withdrew their third party complaint. The case then went to trial against Stop & Shop alone. Stop & Shop filed notice of its intent to claim apportionment against the settled and released parties, Byelas and Palmer.

---

[1] After the plaintiff withdrew the action as against the named defendant et al., the remaining defendants were The Stop & Shop Supermarket Company, The Stop & Shop Companies, Inc., Stop & Shop Holdings, Inc., and The Stop & Shop Supermarket Holdings Company. Only The Stop & Shop Supermarket Company has appealed. We therefore refer in this opinion to The Stop & Shop Supermarket Company as the defendant.

[2] The defendant Byelas is the Irving Byelas Irrevocable Trust, Leslie Byelas and Ruth Byelas. For simplicity, we refer in this opinion to those defendants collectively as Byelas.

The jury was instructed, pursuant to General Statutes § 52-572h, that it could apportion liability among the plaintiff, Stop & Shop and the released parties. The jury returned a plaintiff's verdict of $37,226.96 and apportioned liability as follows: Stop & Shop, 30 percent; Palmer, 22.5 percent; Byelas, 7.5 percent; the plaintiff, 40 percent.

After a reduction of 40 percent from the $37,226.96 verdict, the plaintiff was entitled to receive $22,336.18 from the defendants. The plaintiff, however, already had received $22,500 from the pretrial settlements with Byelas and Palmer. Stop & Shop thereafter filed a motion to reduce the verdict against it to $1. The court denied the motion and Stop & Shop appealed, raising as its sole issue that the court improperly failed to recognize that when the amount of settlement proceeds exceeds the amount of a verdict attributable to settled and released parties who have been named as apportionment defendants, the court must reduce the remaining verdict by that excess. Stop & Shop contends that the plaintiff will receive a double recovery if the verdict is not reduced. General Statutes § 52-216a is the statutory authority for reduction of verdicts by a judge.[3] In *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 591, 627 A.2d 443 (1993), we held that § 52-216a did not require the automatic subtraction of settlement amounts from jury verdicts. "[T]he test to be applied is whether the verdict so shocks the conscience as to compel a reviewing court's conclusion that it was due to partiality, prejudice or mistake. . . . The verdict must fall somewhere within the necessarily uncertain limits of fair and reasonable compensation in the partic-

---

[3] General Statutes § 52-216a provides in relevant part: "If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. . . ."

ular case . . . ." (Citation omitted; internal quotation marks omitted.) Id.

Stop & Shop does not challenge the court's determination under the reasoning of *Mauro* that the amount of the verdict in this matter, when added to the amount of the preverdict settlements, does not shock the conscience. Rather, Stop & Shop contends that the common-law principles that (1) a plaintiff should not be compensated by an amount more than that which makes the plaintiff whole, and (2) the jury's determination of fair and just compensation puts a cap on what the plaintiff can receive, should control. It argues that under those principles, the maximum sum that the plaintiff here could properly receive would be $22,336.18. We are not persuaded. The common-law rules relied on by the defendant apply to verdicts and not to pretrial settlements. No case has been brought to our attention that limits the amount that a plaintiff may agree to receive by way of settlement.

The history of tort reform in Connecticut supports our conclusion.[4] Under the common-law rule of joint and several liability, an injured person was entitled to recover the entire amount of an award of damages from any defendant whose conduct proximately caused her injuries. *Nash* v. *Yap*, 247 Conn. 638, 644–45, 726 A.2d 92 (1999). Under the theory that the law will not aid a wrongdoer, there was no contribution between joint tortfeasors. D. Wright, J. Fitzgerald & W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) § 175, p. 528; A. Materese, "The No Contribution Doctrine," 31 Conn. Bar J. 366 (1957). "In 1986, by enacting [Public Acts 1986, No. 86-338 (P.A. 86-338), known as Tort Reform I], the General Assembly replaced the common-law rule

[4] For a general discussion on the effect of tort reform, see G. Royster, Jr., "Joint and Several Liability and Collateral Sources Under the 1987 Tort Reform Act," 62 Conn. Bar J. 257 (1988).

of joint and several liability with a system of apportioned liability that holds each defendant liable for only his or her proportionate share of damages." *Nash* v. *Yap*, supra, 645. Under Tort Reform I, money received from any collateral source could be deducted from a plaintiff's verdict. At that time, a "collateral source" was defined as "any payments made to the claimant, or on his behalf, (1) by any person as compensation for personal injury or wrongful death attributable to the incident giving rise to the cause of action . . . ." P.A. 86-338, § 5 (a).[5] Only one year later, however, the General Assembly in Public Acts 1987, No. 87-227 (P.A. 87-227),[6] known as Tort Reform II, amended Tort Reform I in response to criticism concerning some provisions of the earlier legislation. *Nash* v. *Yap*, supra, 639–40. "Tort Reform II redefined collateral sources by deleting the section quoted above and explicitly exclud[ed] settlement amounts as allowable deductions from damages awards." Id., 649 n.15.

"Both Tort Reform I and Tort Reform II direct a trial court to reduce an injured party's award for damages by the payments received from 'collateral sources.' See *Fleming* v. *Garnett*, 231 Conn. 77, 82, 92–93, 646 A.2d 1308 (1994). In principle, such reductions reflect the understanding that the entitlement of an injured party to be made whole does not include an entitlement to a double recovery for the same loss. Representing differing points of view about what makes an injured party whole, the two acts contain different definitions of 'collateral sources.' Under Tort Reform I, but not under Tort Reform II, settlements are treated as deductible

---

[5] Public Act 86-338 was codified in General Statutes §§ 13a-149, 30-102, 52-102, 52-184c, 52-190a, 52-225a, 52-225b, 52-225c, 52-225d, 52-226a, 52-251c, 52-557m, 52-557n, 52-568 and 52-572h. *Nash* v. *Yap*, supra, 247 Conn. 639 n.1.

[6] Public Act 87-227 was codified as General Statutes §§ 30-102, 52-102, 52-184c, 52-190a, 52-251c, 52-225a, 52-225b, 52-225c, 52-225d, 52-557m and 52-572h. *Nash* v. *Yap*, supra, 247 Conn. 640 n.2.

collateral sources." *Nash* v. *Yap*, supra, 247 Conn. 648–49.

Accordingly, the defendant might have prevailed during the brief time when Tort Reform I was the rule. It cannot prevail, however, under Tort Reform II as it now exists. The defendant does not argue that it is entitled to prevail under Tort Reform II. Its contention is that at the present time, there are no statutes that govern how preverdict settlements should be handled in evaluating damages. We do not agree.

Stop & Shop claims that this is a case of first impression and urges us to adopt the reduction of verdict rule for which it argues in this appeal. Our examination of the case law discloses that since § 52-216a was enacted in 1976, that statute has been the sole guide for courts in deciding whether a jury's verdict should be reduced. We are furnished with no reason to bring a new rule into an area that is working well under the statute.

The judgment is affirmed.

In this opinion the other judges concurred.