THOMAS MAHON III, ADMINISTRATOR (ESTATE OF SANDRA BOWERS) *v.* B.V. UNITRON MANUFACTURING, INC., ET AL.

WILLIAM BOWERS, ADMINISTRATOR (ESTATE OF ROBERT W. BOWERS) *v.* MALIBU BOATS WEST, INC., ET AL.

RICHARD KOPF ET AL. *v.* MALIBU BOATS WEST, INC., ET AL.
(SC 17410)
(SC 17411)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.*

---

* The listing of justices reflects their seniority status as of the date of oral argument.

Argued September 22, 2006—officially released December 11, 2007

*David N. Rosen*, with whom were *Donald G. Walsh, Jr.*, and, on the brief, *Michael E. Burt*, for the appellant in Docket No. SC 17410 (substitute plaintiff in the second case), and the appellees in Docket No. SC 17411 (plaintiffs in the first and third cases and substitute plaintiff in the second case).

*Dean M. Cordiano*, with whom were *Lauren R. Greenspoon* and, on the brief, *Phillip S. Walker*, for the appellee in Docket No. SC 17410 and the appellant in Docket No. SC 17411 (defendant Brunswick Corporation).

*Opinion*

PALMER, J. The plaintiffs, Thomas Mahon III, administrator of the estate of Sandra Bowers, William Bowers, administrator of the estate of Robert W. Bowers, Richard Kopf and Karen Kopf, brought these consolidated product liability actions pursuant to the Connecticut Product Liability Act, General Statutes § 52-572m et seq., against, inter alia, Brunswick Corporation doing business as Mercury Marine (Mercury Marine).[1] The actions arise out of an accident in which Robert W. Bowers (decedent) and Sandra Bowers were killed, and Richard Kopf and Karen Kopf were seriously injured, when the motorboat in which they were passengers was struck from behind by a second motorboat. The jury returned verdicts for each of the plaintiffs but found

---

[1] The actions are *Mahon* v. *B. V. Unitron Mfg., Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. CV-99-0164084-S (filed August 16, 1999); *Bowers* v. *Malibu Boats West, Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. CV-99-0164438-S (filed August 31, 1999); and *Kopf* v. *Malibu Boats West, Inc.*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. CV-99-0164107-S (filed August 27, 1999). With the exception of Mercury Marine, other defendants in these actions settled with the plaintiffs before the jury returned its verdicts. See footnote 6 of this opinion.

the decedent 33 ⅓ percent contributorily negligent. The administrator of the estate of Robert W. Bowers (decedent's estate) and Mercury Marine each has appealed from the judgments of the trial court.[2] In the first appeal (Docket No. SC 17410), the decedent's estate claims that the trial court failed to instruct the jury adequately on Mercury Marine's special defense of comparative negligence. In the second appeal (Docket No. SC 17411), Mercury Marine claims that the trial court improperly denied its motions for remittitur in which Mercury Marine sought a reduction in the amount of damages that the jury had awarded to each of the plaintiffs in an amount equal to payments that the plaintiffs had received in settlement from certain other alleged tortfeasors. With respect to the appeal of the decedent's estate, we conclude that the trial court failed to instruct the jury adequately on Mercury Marine's special defense of comparative negligence and that that impropriety entitles the decedent's estate to a new trial. With respect to Mercury Marine's appeal, we conclude that the trial court did not abuse its discretion in denying Mercury Marine's motions for remittitur.

The jury reasonably could have found the following facts. On August 17, 1996, at approximately 10 p.m., Sandra Bowers and her husband, the decedent, and Karen Kopf and her husband, Richard Kopf, were having a picnic dinner on the decedent's motorboat on Lake Housatonic in Shelton when the boat's power suddenly failed, causing all of the lights to go out. Almost immediately thereafter, as the decedent was attempting to ascertain the reason for the power failure, a motorboat

[2] We note that the decedent's estate appealed only from the judgment in its case, that is, the second case. Mercury Marine, however, appealed from the judgments in all three cases. The decedent's estate and Mercury Marine each appealed to the Appellate Court, which consolidated the two appeals. We thereafter transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

operated by John Hay[3] crashed into the back of the decedent's boat, throwing both the decedent and Sandra Bowers into the lake, where they drowned. The Kopfs survived the accident but sustained serious injuries.

Subsequent investigation revealed that the boat's power failure was attributable to a defect in the main engine harness connector, which conducts power to the boat's lights and electrical equipment. William Kohl, a marine mechanic for the state department of environmental protection, inspected the boat after the accident and determined that the power had failed due to a poor connection in the multi-pin plug and matching socket that forms part of the main engine harness. Kohl also discovered a small rubber flap inside one of the socket receptacles that may have caused the bad connection. The defective socket was manufactured by Mercury Marine.

Following the accident, investigators recovered a flashlight and horn from the decedent's boat that subsequently were determined to be inoperable. In addition, several safety flares found on the boat also were determined to be past their expiration dates.

The plaintiffs thereafter filed these consolidated actions. In its answer to the amended complaint of the decedent's estate,[4] Mercury Marine raised a special defense of comparative negligence. Specifically, Mercury Marine alleged that the accident and any injuries or damages resulting therefrom were due, in whole or

---

[3] John Hay was fifteen years old at the time of the accident. The boat that he was operating was owned by his father, Thomas Hay.

[4] The decedent's estate thereafter filed a substitute amended complaint for the purpose of substituting William Bowers as the administrator of the decedent's estate. The case name, however, was not changed in the trial court. On September 28, 2005, this court granted William Bowers' motion to change the case name to *William Bowers, Administrator (Estate of Robert W. Bowers)* v. *Malibu Boats West, Inc.*

in part, to the decedent's negligent operation of his motorboat and to the decedent's failure to maintain accessible and operational safety equipment on the boat.

At trial, Mercury Marine introduced evidence of the expired flares and the inoperable horn and flashlight. Mercury Marine also adduced evidence that, at the time of the accident, the decedent's boat was anchored toward the center of the lake, rather than to the side, and that the stern light, which is located at the rear of a boat and which is required equipment that permits a boat to be seen from a 360 degree angle, had been partially covered with tape to keep the light from shining into the boat. The decedent's estate, however, adduced evidence indicating that the light was visible from a 180 degree angle and that, if the power on the boat had not failed, the light would have been visible to boats approaching from behind, the direction from which the Hay boat had approached and struck the decedent's boat.

Prior to closing arguments, Mercury Marine filed a supplemental request to charge on its special defense of comparative negligence. In its request, Mercury Marine sought a jury instruction explaining that the duty of care applicable to the decedent's operation of his motorboat was "the care which an ordinarily prudent person would use in view of the surrounding circumstances."

Thereafter, in its charge to the jury, the trial court properly explained that the standard of care applicable to the plaintiffs' product liability claims was strict liability. Specifically, the court stated: "In order to prove [their] claim[s] under the [Connecticut] [Product] Liability Act, the plaintiff[s] must prove each one of the following four elements by a fair preponderance of the evidence: [1] [Mercury Marine] was a product seller within the terms of [the] statute; [2] the product was

defective; [3] the defect in the product existed at the time the product left [Mercury Marine], that it was expected to reach the user without substantial change in its condition and that it did, in fact, reach the user—in this case, [the decedent]—without substantial change in [its] condition . . . and [4] [the] defect caused injury to these plaintiffs." As to the principle of strict liability, the trial court explained: "It is the unreasonably dangerous condition of the product that makes [a] defendant responsible. It is not whether the defendant knew of the defect or had notice that the product was defective, and it is not whether the defendant was negligent in selling the product."

With respect to Mercury Marine's special defense of comparative negligence, the trial court did not instruct the jury in accordance with Mercury Marine's request to charge. Rather, the court instructed the jury in relevant part: "[The] product liability statute provides [that] the comparative responsibility or fault of a plaintiff shall not bar that plaintiff's recovery, but it shall diminish or reduce that plaintiff's damages proportionately according to the degree of fault that you find is properly attributable to the plaintiff. . . . You will not apply the concept of comparative responsibility unless you have first found, by a fair preponderance of the evidence, that both [the decedent] and [Mercury Marine] each bear some responsibility for the death of [the decedent]. So you must first find [that the decedent's estate] has proven [that Mercury Marine] is liable under the product liability statute and then you must find [that Mercury Marine] has proven by a fair preponderance of the evidence that [the decedent] bears some fault in causing his own death. . . . [Mercury Marine] . . . has asserted that [the decedent] is comparatively responsible for his death in his operation of the boat on the evening in question, specifically to include the absence of accessible and operational safety equipment. You have heard

evidence of the taping of one half of the stern light, of the failure to have a working flashlight or a horn, and flares with expired dates on them. . . . You must determine whether the special defense has been proven by a fair preponderance of the evidence to be a substantial factor in causing [the decedent's] death. If you do not find his conduct in any one of the ways specified or elicited was a substantial factor in causing his death, you must reject the special defense, and, in that case, you will not reduce the amount of damages you award to his estate. If, however, you find that [the decedent's] own conduct was a substantial factor in causing his death, your verdict must reflect that by reducing the amount of damages awarded [to] his estate proportionately."

After the trial court finished instructing the jury, counsel for the decedent's estate took exception to the court's instructions on Mercury Marine's special defense of comparative negligence, claiming that the trial court had failed to define the standard of care applicable to the decedent's allegedly negligent conduct. The trial court, however, declined to reinstruct the jury.

The jury returned verdicts in favor of the plaintiffs. With respect to the decedent's estate, the jury found damages in the amount of $195,000 but determined that the decedent was 33 1/3 percent contributorily negligent. Accordingly, the jury proportionally reduced its award of damages, for a total net award of $130,000. The jury also awarded $150,000 to the estate of Sandra Bowers, $175,000 to Karen Kopf and $45,000 to Richard Kopf.

Thereafter, the decedent's estate filed a motion to set aside the verdict, claiming, inter alia, that the trial court's jury instructions as to Mercury Marine's special defense of comparative negligence were improper. In

support of its motion, the decedent's estate maintained that the trial court had failed to explain the standard of care applicable to the decedent's allegedly negligent conduct.

Mercury Marine filed motions for remittitur; see General Statutes § 52-216a;[5] seeking a reduction in the damages that the jury had awarded in an amount equal to the settlement payments that the plaintiffs had received from other alleged tortfeasors, all of whom originally had been named as defendants in the plaintiffs' actions.[6] In support of its motions, Mercury Marine claimed that the jury awards were excessive as a matter of law in

[5] General Statutes § 52-216a provides: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

[6] The decedent's estate and the administrator of the estate of Sandra Bowers each settled with the defendants B.V. Unitron Manufacturing, Inc., for $83,000, Malibu Boats West, Inc., for $425,000, and Thomas Hay and John Hay for $366,000. Karen Kopf and Richard Kopf each settled with B.V. Unitron Manufacturing, Inc., for $41,500, Malibu Boats West, Inc., for $75,000, and Thomas Hay and John Hay for $183,000. In addition, Richard Kopf and Karen Kopf each settled with the decedent's estate for $42,000. Thus, the decedent's estate and Sandra Bowers' estate each received a total of $874,000 in settlement payments, and Richard Kopf and Karen Kopf each received $341,500 in settlement payments. Because the pretrial settlement payments that each of the plaintiffs received exceeded the amount of damages that the jury had awarded to each plaintiff, the reduction in damages that Mercury Marine sought with respect to each plaintiff exceeded the amount that the jury awarded to each plaintiff. Mercury Marine therefore claimed that it was not required to pay any damages to any of the plaintiffs.

light of two principles: first, the right of an injured victim to be compensated only once for his or her injury; and, second, the constitutional right to a jury determination of damages.

The trial court denied the parties' motions,[7] and these consolidated appeals followed. On appeal, the decedent's estate challenges the trial court's denial of its motion to set aside the verdict on the basis of the court's allegedly improper jury instructions on comparative negligence. Mercury Marine challenges the trial court's denial of its motions for remittitur in an amount equal to the settlement payments that the plaintiffs had received from other alleged tortfeasors. We consider each appeal in turn.

I

We first address the appeal of the decedent's estate, which claims that the trial court improperly failed to instruct the jury on the standard of care applicable to the decedent's conduct in connection with Mercury Marine's special defense of comparative negligence. The decedent's estate contends that because the trial court's jury charge contained no definition of negligence, it provided the jury with inadequate guidance for resolving Mercury Marine's claim that the accident was caused, at least in part, by the decedent's negligence.[8] We agree with the decedent's estate that the trial court's instructions failed to apprise the jury of

---

[7] We note that the decedent's estate and the administrator of the estate of Sandra Bowers filed motions for additur, claiming that the jury awards were inadequate as a matter of law. Upon consideration of the jury award and the settlement payments that the decedent's estate and the estate of Sandra Bowers received, the trial court denied the motions for additur. The trial court's rulings on those motions are not the subject of this appeal.

[8] The decedent's estate maintains that the trial court's failure to define the standard of care applicable to the decedent's conduct created an undue risk that the jury would hold the decedent to the strict liability standard applicable to the product liability claim that the decedent's estate asserted against Mercury Marine because that standard was the only standard about which the jury had been instructed.

the standard of care applicable to the decedent's conduct and conclude that the decedent's estate is therefore entitled to a new trial.

"Our analysis begins with a well established standard of review. When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 142–43, 757 A.2d 516 (2000).

Moreover, not every improper jury instruction requires a new trial because not every improper instruction is harmful. "[W]e have often stated that before a party is entitled to a new trial . . . he or she has the burden of demonstrating that the error was harmful. . . . An instructional impropriety is harmful if it is likely that it affected the verdict." (Citation omitted; internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 448, 782 A.2d 87 (2001).

Recently, we explained that "[General Statutes] § 52-572o[9] incorporates the idea of pure comparative respon-

---

[9] General Statutes § 52-572o provides in relevant part: "(a) In any claim under sections 52-240a, 52-240b, 52-572m to 52-572q, inclusive, or 52-577a, the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant.

sibility into our product liability law. We have explained this notion previously, summarizing the effect of a system of pure comparative responsibility as follows: [A] partial recovery is allowed even if the claimant's injury is attributable mostly to his or her conduct. . . . Subsection (a) of § 52-572o makes this clear by providing that the comparative responsibility of, or attributed to, the claimant, shall not bar recovery but shall diminish the award of compensatory damages proportionately, according to the measure of responsibility attributed to the claimant. As for guidance in determining what type of conduct justifies a finding of comparative responsibility on the part of a plaintiff, subsection (c) of § 52-572o provides that the fact finder shall consider both the nature and quality of the conduct of [each] party. Other than that, the statute does not limit the type of conduct that may be considered in determining a plaintiff's measure of comparative responsibility." (Citation omitted; internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 20–21, 905 A.2d 55 (2006). Furthermore, "[w]e have enunciated the general principle that the question the fact finder must answer in determining whether a plaintiff

"(b) In any claim involving comparative responsibility, the court may instruct the jury to give answers to special interrogatories, or if there is no jury, the court may make its own findings, indicating (1) the amount of damages each claimant would receive if comparative responsibility were disregarded, and (2) the percentage of responsibility allocated to each party, including the claimant, as compared with the combined responsibility of all parties to the action. For this purpose, the court may decide that it is appropriate to treat two or more persons as a single party.

"(c) In determining the percentage of responsibility, the trier of fact shall consider, on a comparative basis, both the nature and quality of the conduct of the party.

"(d) The court shall determine the award for each claimant according to these findings and shall enter judgment against parties liable on the basis of the common law joint and several liability of joint tortfeasors. The judgment shall also specify the proportionate amount of damages allocated against each party liable, according to the percentage of responsibility established for such party. . . ."

bears a measure of comparative responsibility for his or her damages is whether [the plaintiff] failed to exercise that degree of care for his own safety that a reasonable person would have exercised . . . and as a result, contributed to the injuries which he sustained . . . ." (Internal quotation marks omitted.) Id., 21.

Thus, in *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 562 A.2d 1100 (1989), a case involving a products liability claim, we approved the following instruction of the trial court in that case: "Comparative negligence is conduct which involves an undue risk of harm to the person who sustains it. . . . In determining whether [a party] is guilty of comparative negligence . . . you must consider whether [that party] failed to exercise that degree of care for his own safety that a reasonable person would have exercised . . . and as a result, contributed to the injuries which he sustained . . . ." (Internal quotation marks omitted.) Id., 543.

By contrast, in the present case, the trial court provided no guidance with respect to the standard that the jury was required to apply in determining whether the decedent was negligent and, if so, the extent to which his negligence was a contributing factor in the accident that resulted in his death. Indeed, the trial court made only one reference to the concept of negligence in its entire jury charge, explaining that strict liability did not require proof that Mercury Marine had been "negligent in selling the product" at issue. At no time, however, did the trial court explain that negligence is the failure to exercise the care that an ordinarily prudent person would use under the circumstances. Although the trial court directed the jury to ascertain the "comparative responsibility or fault" of the decedent, if any, the court provided no explanation to the jury as to how it was to determine whether the decedent bore any such responsibility or fault for the accident. Without an explanation by the court of the applicable legal stan-

dard—in this case, negligence—the jury essentially was left to evaluate the decedent's conduct by whatever standard it deemed appropriate. The trial court's instructions, therefore, were plainly inadequate to guide the jury in its deliberations on Mercury Marine's special defense of comparative negligence. Because the jury decided the issue of the decedent's comparative negligence in an instructional vacuum, we cannot conclude that the trial court's instruction fairly presented Mercury Marine's comparative negligence claim to the jury in such a way that injustice was not done to the decedent's estate. *Scanlon* v. *Connecticut Light & Power Co.*, supra, 258 Conn. 449. In such circumstances, the decedent's estate has satisfied its burden of establishing that the instructional impropriety was harmful.

Mercury Marine contends, however, that, even if the instruction was harmful, a retrial on liability and damages is unwarranted because neither the decedent's estate nor Mercury Marine has appealed from the jury's findings on those issues. In support of its claim, Mercury Marine contends that any impropriety in the trial court's instructions on comparative negligence tainted the jury's finding on that issue only, and not the jury's threshold findings on liability and damages. Thus, Mercury Marine asserts that the scope of any retrial should be limited to a determination of the decedent's comparative fault. We disagree.

"Ordinarily the reversal of a jury verdict requires a new trial of all the issues in the case. . . . In other words, [a]n order restricting the issues [of a new trial] is the exception, not the rule. . . . When, however, the error as to one issue . . . is separable from the general issues, the new trial may be limited to the error found, provided that such qualification or limitation does not work injustice to the other issues or the case as a whole. . . . But [when] the retrial of the single issue may affect the other issues to the prejudice of either party, the

court will not exercise its discretion in limiting the new trial but will grant it de novo. . . . Thus, [t]he decision to retain the jury verdict on the issue of liability and order a rehearing to determine only the issue of damages should never be made unless the court can clearly see that this is the way of doing justice in [a] case. . . . As a rule the issues are interwoven, and may not be separated without injustice to one of the parties." (Citations omitted; internal quotation marks omitted.) *Carlson* v. *Waterbury Hospital*, 280 Conn. 125, 151–52, 905 A.2d 654 (2006). "We have adopted [this] general rule in recognition of the fact that the jury may have rendered a compromise verdict, that is, a verdict where[by] some of the jurors . . . conceded liability against their judgment, and some . . . reduced their estimate of the damages in order to secure an agreement of liability with their fellow jurors. . . . When a compromise verdict exists, a new trial confined to the single issues of damage will be a serious injustice to the [party seeking the new trial as] [h]e has never had the issue of liability determined by the conscientious conviction of all of the jur[ors]; and that he is entitled to have." (Internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, supra, 258 Conn. 450.

Mercury Marine has provided no persuasive reason why the present case constitutes an exception to the rule that a judgment ordering a new trial ordinarily requires a retrial on all contested issues. We have no way of knowing whether the jury rendered a compromise verdict, with some of the jurors agreeing to a finding of liability only because other jurors were willing to compromise on the amount of damages. If the verdict was the product of such a compromise, the comparative negligence finding and award may have been a component of the jurors' agreement. We therefore cannot discount the possibility that the jury's resolution of the issue of comparative negligence was

directly related to its resolution of the issues of liability and damages. Accordingly, we conclude that the decedent's estate is entitled to a new trial on all of those issues.

## II

In its appeal, Mercury Marine contends that the trial court improperly denied its motions for remittitur. In support of its claim, Mercury Marine asserts that, under § 52-216a, the trial court was required to reduce the damages that the jury had awarded to each of the plaintiffs in an amount equal to the settlement payments that each of the plaintiffs previously had received from other alleged tortfeasors. Mercury Marine makes two arguments in support of its claim. First, Mercury Marine contends that the trial court's failure to grant its motions for remittitur violated the one satisfaction rule, a common-law rule that provides that "[a] plaintiff may be compensated only once for his just damages for the same injury." (Internal quotation marks omitted.) *Gionfriddo* v. *Gartenhaus Cafe*, 211 Conn. 67, 71, 557 A.2d 540 (1989). Second, Mercury Marine asserts that the trial court's refusal to reduce the jury's damages awards in accordance with the motions for remittitur violated the parties' "constitutional right to have issues of fact, including damages, determined by a jury . . . ." *Wichers* v. *Hatch*, 252 Conn. 174, 188, 745 A.2d 789 (2000). We reject both contentions.

## A

We first address Mercury Marine's claim that the trial court improperly denied its motions for remittitur in violation of the one satisfaction rule. Our analysis of this claim is guided by certain governing principles. "First, the amount of an award [of damages] is a matter peculiarly within the province of the trier of facts. . . . Second, the court should not interfere with the jury's determination except when the verdict is plainly exces-

sive or exorbitant. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . Third, the ruling of the trial court on the motion to set aside the verdict as excessive is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . The court's broad power to order a remittitur should be exercised only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . The relevant inquiry is whether the verdict falls within the necessarily uncertain limits of fair and reasonable compensation or whether it so shocks the conscience as to compel the conclusion that it was due to partiality, prejudice or mistake." (Citations omitted; internal quotation marks omitted.) *Tomczuk* v. *Alvarez*, 184 Conn. 182, 187–88, 439 A.2d 935 (1981). Furthermore, "[t]he decision whether to reduce a jury verdict because it is excessive as a matter of law [within the meaning of § 52-216a] rests solely within the discretion of the trial court . . . . [Consequently], the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as excessive as a matter of law is that of an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Mulligan* v. *Rioux*, 229 Conn. 716, 753, 643 A.2d 1226 (1994).

Mercury Marine contends that the trial court improperly denied its motions for remittitur because the damages that the jury awarded to each of the plaintiffs, when added to the settlement payments that each of the plaintiffs received, were excessive as a matter of law within the meaning of § 52-216a. Mercury Marine

does *not* claim that those amounts are excessive because they are so great as to be manifestly unjust in view of the nature and severity of the injuries sustained. Rather, Mercury Marine claims that a remittitur is required because the awards violate the one satisfaction rule, a rule that is based on the common law's disfavor of double recoveries. "[T]he rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury. . . . Connecticut courts consistently have upheld and endorsed the principle that a litigant may recover just damages for the same loss only once. The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste." (Citation omitted; internal quotation marks omitted.) *Carlson* v. *Waterbury Hospital*, supra, 280 Conn. 150–51 n.30. Mercury Marine contends that, unless the jury awards are reduced by an amount equal to the settlement payments that each of the plaintiffs received, each plaintiff's total recovery will greatly exceed the compensation that the jury determined to be fair and appropriate as reflected by its verdicts. We conclude that the trial court did not abuse its discretion in determining that the awards in the present case were not excessive as a matter of law within the meaning of § 52-216a.

This court and the Appellate Court previously have addressed the same essential claim that Mercury Marine has raised in the present case, and both courts repeatedly have rejected it, both under the current version of § 52-216a; e.g., *Black* v. *Goodwin, Loomis & Britton, Inc.*, 239 Conn. 144, 167–68, 681 A.2d 293 (1996); *White* v. *Irving Byelas Irrevocable Trust*, 64 Conn. App. 506, 509–10, 780 A.2d 989 (2001); *Martins* v. *Connecticut*

*Light & Power Co.*, 35 Conn. App. 212, 214 n.2, 645 A.2d 557, cert. denied, 231 Conn. 915, 648 A.2d 154 (1994); *Mauro* v. *Yale-New Haven Hospital*, 31 Conn. App. 584, 586–87, 591, 627 A.2d 443 (1993); see *Peck* v. *Jacquemin*, 196 Conn. 53, 70–72, 491 A.2d 1043 (1985); see also *Imbrogno* v. *Chamberlin*, 89 F.3d 87, 90 (2d Cir. 1996) (trial court may reduce jury verdict under § 52-216a by amount plaintiff received in settlement only if jury award is excessive when considered in light of amount of settlement payment); *Densberger* v. *United Technologies Corp.*, 125 F. Sup. 2d 585, 600 (D. Conn. 2000) (same), aff'd, 283 F.3d 110 (2d Cir. 2002), and aff'd, 297 F.3d 66 (2d Cir. 2002), cert. denied, 537 U.S. 1147, 123 S. Ct. 876, 154 L. Ed. 2d 849 (2003); *Bovat* v. *Waterbury*, 258 Conn. 574, 598–99, 783 A.2d 1001 (2001) (explaining, in dictum, that § 52-216a, as interpreted by this court in *Peck*, "bars the reduction of [a] jury [verdict] by amounts received from pretrial settlements unless the trial court finds the verdict excessive as a matter of law [in light of those settlement amounts]"); and previous versions of § 52-216a.[10] See, e.g., *Fritz* v. *Madow*, 179

_____

[10] We note that, under an earlier version of § 52-216a, although parties were precluded from informing the jury of any pretrial settlement agreements, the court, at the conclusion of the trial, was permitted, in the exercise of its discretion, to deduct from the verdict any pretrial settlement payments that had been received by any party, without any provision for the plaintiff to elect a new trial in lieu of any reduction in the verdict. See, e.g., General Statutes (Rev. to 1981) § 52-216a. In *Seals* v. *Hickey*, 186 Conn. 337, 441 A.2d 604 (1982), we concluded, first, that this court, in *Fritz* v. *Madow*, 179 Conn. 269, 272, 426 A.2d 268 (1979), properly determined that the legislature, in using the word "may" rather than the word "shall" in characterizing the trial court's authority under General Statutes (Rev. to 1981) § 52-216a to reduce the verdict, had imposed upon the court "a discretionary rather than a mandatory duty" with respect to any such reduction. (Internal quotation marks omitted.) *Seals* v. *Hickey*, supra, 345. We further concluded, however, that General Statutes (Rev. to 1981) § 52-216a violated the parties' constitutional right to a jury trial because, "[u]nlike the circumstance [in which] the court may order an additur or remittitur [in the exercise of its common-law authority] . . . [General Statutes (Rev. to 1981)] § 52-216a, without more, gives the trial court the power to adjust the verdict without the option of a new trial." Id., 353. In response to our holding in *Seals*, the legislature immediately amended General Statutes (Rev. to 1981) § 52-216a; see Public

Conn. 269, 272–73, 426 A.2d 268 (1979). Indeed, we expressly have stated that the legislature, by virtue of its enactment of § 52-216a, had "altered" the "common-law rule requiring deduction of preverdict payments from verdicts." *Seals* v. *Hickey*, 186 Conn. 337, 346, 441 A.2d 604 (1982); see also *Bovat* v. *Waterbury*, supra, 599 (§ 52-216a abrogated common-law rule barring "windfall of double recovery"). Thus, these cases make it abundantly clear that, under § 52-216a, a trial court may, in the exercise of its discretion, reduce a jury award to account for pretrial settlement payments. Before doing so, however, the court first must determine that the settlement payments, when added to the jury award, render that award excessive as a matter of law, a threshold that is met only when the total amount received so far exceeds what is fair and reasonable as to be unconscionable.

In light of this long interpretative history, Mercury Marine has a heavy burden of demonstrating why we should not treat the legislative silence in response to our construction of § 52-216a as legislative approval of that construction. Although "we are aware that legislative inaction is not necessarily legislative affirmation . . . we also presume that the legislature is aware of [this court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . . Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action,

Acts 1982, No. 82-406, § 3; to cure the constitutional defect. In particular, the legislature amended § 52-216a by providing that the court shall order an additur or remittitur if the verdict is "excessive as a matter of law" and, if the additur or remittitur is rejected, the court then shall order a new trial. Section 52-216a has remained unchanged since it was amended in 1982.

the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 874, 792 A.2d 774 (2002). Mercury Marine has failed to explain why the doctrine of legislative acquiescence should not guide our resolution of its claim.[11]

Mercury Marine asserts that this court correctly construed § 52-216a in another case, namely, *Alfano* v. *Ins. Center of Torrington*, 203 Conn. 607, 525 A.2d 1338 (1987). According to Mercury Marine, our construction of § 52-216a in *Alfano* comports with its view that any pretrial settlement payment that a plaintiff receives in excess of the jury award necessarily renders the verdict excessive as a matter of law under § 52-216a. We are not persuaded by Mercury Marine's argument.

In *Alfano*, the plaintiff, Raymond G. Alfano, Sr., brought an action against the defendant insurance agency, Insurance Center of Torrington (agency), alleging that the agency negligently had failed to procure fire insurance coverage for a building that Alfano had purchased three days before it was destroyed by fire. Id., 608. Alfano's complaint also contained a count in which Alfano asserted a malpractice claim against the attorney who had represented him at the closing on the building. Id. Alfano claimed that the attorney failed to advise him of the need to purchase fire insurance for the building. Id. Before trial, Alfano settled the claim against the attorney for $15,000. Id. Thereafter, a jury

[11] We note that, under General Statutes § 52-225a, collateral source payments are to be deducted from an award of economic damages. Under § 52-225b, however, settlement payments are not considered collateral sources. Thus, as in *Bovat* v. *Waterbury*, supra, 258 Conn. 574, a highway defect case, "we find it persuasive that settlements expressly have been excluded from the statutory definition of 'collateral sources' for purposes of civil actions, either in tort or in contract . . . ." Id., 601.

returned a verdict against the agency in the amount of $30,000 but also found Alfano 35 percent contributorily negligent and, accordingly, reduced the award to $19,500. Id. The trial court denied the agency's motion to set aside the verdict but, under § 52-216a, ordered a remittitur of $15,000, the amount that Alfano had received from the attorney in settlement of his malpractice claim. Id.

On appeal, Alfano claimed that the remittitur was improper because there was evidence before the jury to support a substantially higher valuation of the building than that found by the jury. Id., 609–10. In rejecting Alfano's contention, we explained that, although there had been some evidence to support a higher valuation of the building, there also was ample evidence to support the jury's finding. See id., 610. We further explained that, although Alfano had alleged additional elements of damage, such as the rental value of the building from the date of the fire, interest and attorney's fees, he had not challenged the trial court's decision not to submit those items to the jury for its consideration. Id. Thus, we concluded that the jury's finding of damages "must be deemed a proper basis for the trial court to have relied [on] in ordering the remittitur." Id. We further explained that, in *Peck* v. *Jacquemin*, supra, 196 Conn. 71, "this court construed . . . § 52-216a . . . to permit a payment by one joint tortfeasor resulting from a settlement before trial to reduce a jury verdict against another joint tortfeasor *only* where the verdict otherwise would be excessive as a matter of law." (Citation omitted; emphasis added; internal quotation marks omitted.) *Alfano* v. *Ins. Center of Torrington*, supra, 203 Conn. 610. Quoting from *Peck*, we then stated that, "[i]n making its postverdict determination on the issue of any claimed excessiveness . . . the trial court [is] directed to consider the amount of money paid to a plaintiff as the result of [a settlement with another tortfeasor]."

(Internal quotation marks omitted.) Id., quoting *Peck* v. *Jacquemin,* supra, 71.

In view of the requirement of *Peck* that a court shall consider settlements as part of its excessiveness inquiry, we concluded in *Alfano* that the trial court had not abused its discretion in determining that the verdict, when considered with the settlement payment that Alfano had received from the attorney, was excessive. *Alfano* v. *Ins. Center of Torrington,* supra, 203 Conn. 611. Specifically, we stated: "It can hardly be disputed that . . . the award of $19,500 to [Alfano] was excessive as a matter of law, because, when the $15,000 received in the settlement with his attorney is added to that sum, [Alfano] would receive total compensation of $34,500. This amount is $4500 greater than the jury's finding of $30,000 as the amount of [Alfano's] loss from the fire. The verdict was, therefore, excessive as a matter of law by $4500, even if the jury had made no deduction for the contributory negligence of [Alfano]." Id. We further observed that, with respect to the net jury award of $19,500, because "the resulting verdict of $19,500 represent[ed] a legally unassailable determination of fair compensation for [Alfano's] loss under our comparative negligence statute . . . any additional compensation received by [Alfano] for that loss must be deemed excessive as a matter of law. Accordingly, the trial court's order that [Alfano] remit the $15,000 he had received in the settlement of his claim against his attorney, of which the jury was unaware in rendering its verdict, was entirely appropriate . . . ."[12] (Citation omitted.) Id.

Relying primarily on our reasoning in *Alfano* that the jury verdict constituted a "legally unassailable determi-

---

[12] We note that both *Peck,* which was decided in 1985, and *Alfano* involved factual scenarios that predated the October 1, 1986 effective date of the amendments to §§ 52-225a and 52-225b pursuant to which settlements were excluded from the definition of collateral sources. See *Alfano* v. *Ins. Center of Torrington,* supra, 203 Conn. 610 n.3; see also Public Acts 1986, No. 86-338, §§ 4 and 5.

nation of fair compensation"; id.; such that Alfano's pretrial settlement with his attorney rendered the verdict excessive as a matter of law, Mercury Marine contends that any and all jury awards must be reduced by the amount of any settlement payment that a plaintiff receives prior to trial. We do not agree that *Alfano* stands for so broad a proposition. *Alfano* was decided just two years after *Peck*, in which this court had construed § 52-216a to permit, *but not to require*, a reduction in a jury verdict in an amount equal to pretrial settlement payments. See *Peck* v. *Jacquemin*, supra, 196 Conn. 70–72. We will not lightly conclude that *Alfano* overruled *Peck* sub silentio because "[w]e do not ordinarily indulge in the presumption that [this] [c]ourt would so cavalierly overrule such . . . recent authority without even acknowledging that it was doing so." (Internal quotation marks omitted.) *State* v. *Brown*, 14 Conn. App. 605, 628–29, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). Indeed, in view of the fact that we expressly *relied* on *Peck* in *Alfano*, it is particularly unlikely that the court in *Alfano* intended to overrule our holding in *Peck*.[13]

---

[13] We note that, in *Mauro* v. *Yale-New Haven Hospital*, supra, 31 Conn. App. 588–89, the Appellate Court expressly rejected a claim that *Alfano*, among other cases, had overruled *Peck*. In *Mauro*, the Appellate Court distinguished *Alfano* from *Peck* on the ground that *Alfano* involved a claim for property loss whereby damages were fixed and certain, whereas the jury award in *Peck*, a personal injury case, necessarily fell "within a spectrum of possible sums that could [have been] awarded as just damages." Id., 589. The court in *Mauro* further explained: "Because of the nature of personal injuries and the pain and suffering ancillary to the injuries, the amount awarded by a jury is not absolute. The amount of the loss in *Alfano* was fixed, and, therefore, any recovery beyond the jury verdict would necessarily be excessive. Thus, there was no reason for the court in *Alfano* to exercise the limited role given to it by § 52-216a." Id. Although we agree that a reduction in a verdict by the amount of pretrial settlement payments may be appropriate when, as in *Alfano*, the damages are fixed or undisputed, we emphasize, first, that a trial court has broad discretion to determine whether remittitur is necessary in any particular case, and, second, a court should be cautious in concluding that damages are fixed or absolute because, in most cases, they are not.

As we have explained, in *Alfano*, we upheld the trial court's decision to order a remittitur under § 52-216a. See *Alfano* v. *Ins. Center of Torrington*, supra, 203 Conn. 610–11, 614. We determined that the trial court had not abused its discretion in concluding that the verdict was excessive, thereby requiring a remittitur or, alternatively, a new trial. Id. In view of the fact that *Alfano* involved a claim for damages arising out of a loss of property, the amount of which "was readily ascertainable and absolute"; *Mauro* v. *Yale New-Haven Hospital*, supra, 31 Conn. App. 589; we determined that the trial court in that case had not abused its discretion in finding that a remittitur was appropriate. See *Alfano* v. *Ins. Center of Torrington*, supra, 609–10. With respect to the issue of the propriety of the trial court's order of remittitur, our holding in *Alfano* was no broader. To the extent that any of our language in *Alfano* may be construed as suggesting a more expansive holding, we expressly disavow any such implication. Rather, as the Appellate Court has observed, the construction of § 52-216a that we articulated in *Peck* is controlling unless and until the legislature decides otherwise. See *Mauro* v. *Yale-New Haven Hospital*, supra, 589.

Mercury Marine also claims that, because the plaintiffs' product liability claims do not implicate our statutory apportionment scheme; see General Statutes § 52-572 (h) (precluding apportionment of damages between parties on any basis other than negligence); we must construe § 52-216a to require an order of remittitur with respect to the pretrial settlement payments that the plaintiffs had received. Mercury Marine contends that such a requirement is necessary to preserve the one satisfaction rule in a case such as the present one, in which the jury is unable to apportion damages because our statutes do not permit it. Section 52-216a, however, does not distinguish between cases that implicate our statutory apportionment scheme and cases that do not.

Of course, the legislature is free to draw such a distinction, but we will not do so in the absence of an evident legislative intent to accomplish that result.[14] See, e.g., *State* v. *Desimone*, 241 Conn. 439, 455, 696 A.2d 1235 (1997) ("[a]bsent compelling countervailing reasons, we will not impute to the legislature an intent that is not apparent from the plain statutory language").

B

Mercury Marine next contends that the trial court's denial of its motions for remittitur violated the parties' constitutional right to have a jury determine damages.

---

[14] In support of its argument, Mercury Marine notes that, in *Peck*, this court stated that "nothing we say today in any way changes the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered." *Peck* v. *Jacquemin*, supra, 196 Conn. 70 n.19. In light of our analysis and holding in *Peck*, our statement cannot be read to require the remittitur of all pretrial settlement payments, irrespective of whether those payments, when added to the jury award, would render the plaintiff's total recovery so disproportionate to the injuries sustained that it would be manifestly unjust not to order a remittitur. In reaffirming our adherence to the one satisfaction rule in *Peck*, we simply meant that a trial court should be mindful of the principle in determining whether the jury award and any pretrial settlement payments, taken together, are greater than the amount that the plaintiff reasonably should be allowed to recover. Indeed, as we recently have noted, "under Tort Reform II, because settlements are not collateral sources, the jury's allocation of the settled person's percentage of liability measured against the total amount of the plaintiff's total damages, as stated in the jury award, determines whether the plaintiff will receive a windfall or a shortfall." *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 735, 778 A.2d 899 (2001). Thus, the potential for a "windfall" exists, even under our system of proportional liability, depending on whether the plaintiff "made a 'good' or 'bad' settlement"; id., 735 n.18; in light of "the jury's ultimate assessment of liability and percentage of negligence for which each defendant is responsible . . . ." Id. Finally, we agree with the Appellate Court that, as a general matter, "the common-law principles that (1) a plaintiff should not be compensated by an amount more than that which makes the plaintiff whole, and (2) the jury's determination of fair and just compensation puts a cap on what the plaintiff can receive . . . apply to verdicts and not to pretrial settlements." *White* v. *Irving Byelas Irrevocable Trust*, supra, 64 Conn. App. 510. Because the present case involves settlement payments, the common-law principles on which Mercury Marine relies ultimately are not determinative of its claim.

In essence, Mercury Marine claims that the jury award represents the constitutional maximum that the plaintiffs may receive. This claim requires little discussion. It is true, of course, that a litigant has a constitutional right to have issues of fact determined by a jury; e.g., *Wichers* v. *Hatch*, supra, 252 Conn. 188; and that the right to a jury determination of factual issues extends to the issue of damages. Id. Mercury Marine, however, has failed to provide any support for the premise underlying its claim, namely, that the jury award represents a constitutional limitation on the total payments that a plaintiff may receive in compensation for his or her injuries. When a jury trial results in a verdict against a defendant, the verdict does place a constitutional cap on the amount that a defendant may be required to pay to the plaintiff. Contrary to Mercury Marine's assertion, however, a defendant's right to a jury trial does not include the right to bar the plaintiff from receiving the benefit of any pretrial settlement amounts that the plaintiff has negotiated with other alleged tortfeasors. In other words, whether a jury verdict should be reduced in light of any pretrial settlement payments is an issue ultimately to be resolved by the legislature as a matter of public policy; it is not an issue that implicates any fundamental rights of the defendant. Thus, Mercury Marine is entitled to the protection afforded it under § 52-216a and no more. Because we have determined that the trial court did not abuse its discretion under § 52-216a; see part II A of this opinion; Mercury Marine has failed to demonstrate any right to a remittitur.

With respect to the appeal in Docket No. SC 17410, the judgment in the case of *Bowers* v. *Malibu Boats West, Inc.*, is reversed and the case is remanded for a new trial; with respect to the appeal in Docket No. SC 17411, the judgments in the cases of *Mahon* v. *B.V. Unitron Mfg., Inc.*, and *Kopf* v. *Malibu Boats West, Inc.*, are affirmed.

In this opinion the other justices concurred.